James W. TYLER et al., Plaintiffs
and Appellees,

v.

Lyle W. PORTER, Defendant
and Appellant.

Lyle W. PORTER, Plaintiff
and Appellant,

v.

James W. TYLER et al., Defendants
and Appellees.

Civ. Nos. 9098, 9099.

Supreme Court of North Dakota.

May 19, 1975.

Richard P. Rausch and Lundberg, Nodland & Schulz, Bismarck, for James W. Tyler, A. Marie Tyler and Tyler's Western Village, Inc., plaintiffs and appellees in Civil No. 9098, and for the same parties as well as William Clairmont, defendants and appellees in Civil No. 9099, argued by Mr. Rausch.

Sperry & Schultz, Bismarck, and Belli, Ashe, Ellison & Choulos, San Francisco, Cal., for Lyle W. Porter, defendant and appellant in Civil No. 9098 and plaintiff and appellant in Civil No. 9099, argued by Thomas J. Anton, San·Francisco, Cal.

VOGEL, Justice.

On September 1, 1967, James W. Tyler and A. Marie Tyler (hereinafter Tyler) entered into a contract with Lyle W. Porter, doing business as Porter Real Estate Company, granting the company (hereinafter Porter) "the sole and exclusive right to sell" certain described property, "in consideration of the services rendered and to be rendered" by Porter, and granting Porter a cash commission of 20 percent of the selling price of the property, consisting of approximately 324 acres, except for a small tract of 8.7 acres on which the agreed commission was to be 10 percent. The agreement recited that it would remain in effect until May 15, 1978, or until the development project contemplated upon it was completed, or until the death or permanent disability of Lyle W. Porter, or until termination by mutual agreement, and that it "shall be binding upon the owners, the survivor of such owner [sic], their heirs, administrators and executors." A number of sales of lots were made from the tract and the commission was paid to Porter. The prices of lots and tracts to be sold were not specified in the contract. Porter appears to have participated to some degree in the planning of the tract and the obtaining of public approval as to zoning and other matters affecting the public.

On May 1, 1969, Tyler transferred 160 acres of the tract to a corporation, closely held, which appears to have been formed for that purpose.

On April·9, 1974, the stock in the corporation was sold to William Clairmont, a road contractor, who also was interested in other subdivisions nearby. Clairmont also purchased the tract of 8.7 acres, and received from Tyler an option to buy the remainder of the 324-acre area affected by the Porter contract.

Shortly after the sale of the stock and the real estate and execution of the option contract to Clairmont, Clairmont notified Porter and the public that he was planning to change the plans for the development so as to possibly include a golf course and a lake, and that sales of lots would be suspended until plans for the project were revised and new prices were established.

Porter took the position that he was entitled to continue selling lots and tracts in accordance with his agreement with Tyler, and located several purchasers who executed contract forms. These contract forms, however, were not accepted by Clairmont. One would-be purchaser threatened suit against Clairmont to enforce his claim to a conveyance.

Tyler thereupon commenced the first of the two actions involved here, No. 9098, and obtained a temporary restraining order, re-

straining Porter from "taking purchase orders, soliciting and using any other means or manner of interfering with plaintiffs and their properties; . . ." A bond of $1,000 was furnished at first, and later it was raised to $20,000. On June 4, 1974, a motion and application to vacate the restraining order was made and served; a motion for change of judge was made and granted shortly thereafter; and a motion to quash the order to show cause and restraining order was made and served.

On July 16, 1974, the court entered an order denying the motion to quash. Its order states, in part:

". . . and the Court having found that the subject matter of the action concerns real estate . . . which could be dissipated if the defendant were not restrained and would further result in additional and unnecessary litigation, being multiplicity of actions,

"IT IS ORDERED that the Motion of the defendant to quash the Restraining Order be, and the same is denied and the said Restraining Order shall continue in full force and effect, . . ."

In the meantime, discovery procedures were under way. Porter, dissatisfied with answers to interrogatories he had propounded, and with Tyler's failure to produce documents demanded, moved for an order to compel discovery. On December 31, 1974, Porter made a motion to compel production of certain documents and to require further answers to interrogatories. In connection with this motion, claims were asserted that the record for the restraining order was insufficient, that the records when produced would show that the $20,000 bond was signed without authority, that the affidavits in support of the original restraining order were insufficient, and that there were therefore no grounds for the original restraining order. However, we note that there was no appeal from the order granting the original restraining order, which was appealable. See Section 28–27–02, N.D.C.C., subdivision 3. The trial court, however, considered the various motions for discovery and to vacate and quash the restraining order at a hearing on January 9, 1975, wherein all matters were submitted on affidavits, the interrogatories, and pleadings, and were briefed and argued. The court denied the Porter motion to vacate the injunction and continued it

"for the reason that to permit the defendant Porter to offer for sale the property contained in Tyler's Western Village, or in particular the properties contained in the Porter contract with the Tylers, could result in needless confusion and litigation on the part of prospective purchasers with the Tylers; the plaintiffs' remedy at law would be inadequate should they ultimately prevail at the trial of this matter on its merits and the judgment of the plaintiffs Tylers, if one should be forthcoming to them, would be ineffectual if the defendant Porter would continue to offer or continue to sell the property which is the subject matter of this litigation."

The court further ruled that, although Section 32–06–03, N.D.C.C., provides that

". . . In no case shall a longer period than six months elapse before the hearing of the merits of the case shall be had for the purpose of deciding the question as to the justice or necessity of making the temporary restraining order permanent";

the delay for 6½ months in holding the hearing was largely the fault of Porter. The court stated that it felt

"that the delays in bringing the matter on for trial have been caused for the most part by the defendant Porter; that the court had suggested on the 9th day of July, 1974, that an August trial date be set but Porter's counsel could not fit that into his schedule; the counsel for Mr. Porter was to contact the court upon his

return to North Dakota in September as to a hearing date in this matter and for the setting of a firm trial date, but the court was not contacted in this context; the court suggested a November hearing date and counsel for Porter informed the court that his associate counsel, Melvin Belli, could not be present and requested a December date; the court set the matter for December 6, 1974, but had to change the date due to an election recount in which this court was involved at that time; the court suggested an alternate date of December 18, 1974, and was again informed by counsel for Porter that Melvin Belli could not be present at that time; the court feels that the matter could have been disposed of some time ago and the dereliction has been on the part of the defendant Porter; that it would also be unjust and inequitable to invoke the prohibition of Section 32–06–03 against the plaintiffs Tyler."

Under the circumstances outlined by the trial court, we hold that the requirements of Section 32–06–03 were waived by Porter, the party who objected to making the temporary order permanent.

The court further decided that some of the unanswered interrogatories called for relevant answers and should be answered, and that other interrogatories need not be answered. We have examined the ruling and find that the trial court's discretion was not abused.

The trial court also found that the bond previously set was in compliance with Section 32–06–05, and the bond was in proper form and adequate. Again, this is a matter within the discretion of the court, and we hold that the discretion was not abused.

The trial court further considered the allegations in the second action, brought by Porter against Tyler, in which he asked for a mandatory injunction to require Tyler, and Clairmont, who is a party to the second action, to approve a contract negotiated by Porter for the sale of a portion of the premises and to permit Porter to proceed with the sales of all the remainder of the premises pursuant to a price list he alleges to have been orally agreed upon as of April 1, 1974, by Tyler. In oral argument Porter said he seeks specific performance. The trial court denied the motion for an injunction "for the reason that it is obviously standing contrary to the prior injunction and that it would be countermanding its ruling in granting the injunction in the first place as has been previously stated."

From this order Porter has appealed, filing separate appeals in each action.

Although the parties, in briefing and argument, often adverted to their contentions in the principal action, the issues in the principal action are not before us. We therefore have nothing to say at this time on the contention of Porter that Tyler has violated his contract or the contention of Tyler that Porter has violated his; nor do we decide whether Porter is entitled to a commission on the sale to Clairmont or whether any of the parties are entitled to permanent injunctive relief or damages or specific performance. The only issues before us relate to the discretion exercised by the trial court in ruling on motions and in the issuance or refusal of restraining orders and injunctions, and whether or not that discretion was abused.

■ We hold that the discretion of the trial court was not abused in fixing the amount of the undertaking, in extending the effect of the order beyond six months in the light of the delay caused by the moving party, in making the findings that it did or in failing to make more specific findings, in denying the motions to quash and to reconsider, and in denying the injunction sought by Porter.

■ Because it is apparent that if Porter is ultimately successful in this litigation he will be entitled to recover damages in excess of $20,000, the bond is inadequate to

protect him if he is the only party restrained. In view of the magnitude of harm that each side in this controversy is capable of visiting upon the other, perhaps, rather than restraining only one party and subjecting the other to a bond, both parties should be restrained from taking any action which might be detrimental to the other, pending disposition of the case. Therefore, upon remand, we recommend that the trial court, sua sponte, increase the bond or, to better preserve the status quo, restrain both parties from acting to the detriment of the other.

We have expedited the release of this opinion so that the trial court may fix an early date for trial on the merits.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., and NORBERT J. MUGGLI, District Judge, concur.