**Regene A. RONNGREN, Plaintiff and Appellee,**

v.

**David BESTE, d/b/a Stone's Communication, a North Dakota Partnership, Defendant and Appellant.**

**Civ. No. 910243.**

Supreme Court of North Dakota.

April 3, 1992.

Nelson, Schmidt, Grossman & Mastel, Grand Forks, for plaintiff and appellee; argued by Dwight F. Kalash.

Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for defendant and appellant; argued by Ralph F. Carter.

LEVINE, Justice.

David Beste appeals from a district court order finding him in contempt of a restraining order, ordering him to dismiss two actions he brought in county court and small claims court and assessing attorney fees of $150. The order was entered in an action, still pending, brought against Beste by Regene A. Ronngren. We affirm in part, reverse in part and remand.

On September 28, 1990, Beste agreed to sell to Ronngren a business known as the Grand Forks Telephone Answering Service. Ronngren rented from Beste the building in which the business's base station was located. Amendatory addenda were attached to the purchase contract on October 5 and November 6, 1990. On December 4, 1990, Beste served Ronngren with a notice of default for failure to make a payment due November 30, 1990.

On December 5, 1990, Ronngren sued Beste for breach of contract and the district court issued a temporary restraining order to Beste, providing in part:

"You are hereby restrained from interfering with the operation of the business known as the Grand Forks Answering Service by the Plaintiff herein pending further Order of this Court.

"You are further restrained from taking any action which is designed to impede, obstruct or in any way cause a delay in the delivery of services to the customers or clientele of said business by the Plaintiff pending further Order of this Court."

The temporary restraining order was accompanied by a notice that a hearing on the need for continuation of the restraining order would be held on January 21, 1991.

Beste's motion to dissolve the temporary restraining order was denied by the district court. At the January 21, 1991, hearing on the need for continuation of the temporary restraining order, counsel read into the record the terms of a proposed settlement agreement, which was to be reduced to writing and signed by the parties. The following colloquy occurred between the court and counsel for Beste:

"MR. CARTER: And, Your Honor, Mr. Kalash and I have agreed that pending the resolution of this matter, which we hope will take place at closing possibly this week, next week at the latest, we have agreed that the temporary restraining order stay in place until that time. Should for any reason the agreement that we believe we have break down, then, of course, both sides will remain free to come back to the Court, and for our part ask the Court to dissolve it and for their part ask the Court to retain it.

"THE COURT: So then in a technical sense the temporary order remains permanent until we hear from you.

"MR. CARTER: We're asking that the Court do that, if the Court doesn't have any problem with that, and we're hoping that within a week or so we can come back and tell the Court that we've resolved the matters and both parties agreed to have the temporary restraining order dissolved."

In March, 1991, Ronngren moved her business office to another location but left her base station in the building she had rented from Beste. Beste later sued

Ronngren in small claims court to recover on a disputed claim for $240 and brought a forcible detainer action in county court to force the removal of Ronngren's base station from the building owned by Beste. On May 20, 1991, Ronngren filed a motion for an order holding Beste in contempt of the temporary restraining order. On June 18, 1991, Beste filed an application to dissolve the order. A hearing was held on June 19, 1991. Ronngren's attorney asserted that "the base station must be in close proximity to the antenna that is on the tower at 18th and Dyke" or Ronngren "will not be able to provide her services to her customers." The court found that, by filing actions in county court and small claims court, Beste was in civil contempt of the temporary restraining order. The court issued an order that: (1) ordered Beste to dismiss his actions in county court and small claims court; (2) enjoined Beste from moving or disabling Ronngren's base station until further order of the court; (3) found Beste in contempt of the restraining order prohibiting him from interfering with Ronngren's business and finding that the contempt could be purged by filing dismissals of the actions in county court and small claims court; (4) set a date for an evidentiary hearing; (5) assessed attorney fees of $150 against Beste; and (6) denied Beste's motion to vacate the restraining order. Beste appealed.

■ Because the underlying action remains pending in the district court, we must determine if the district court order is appealable before judgment is entered. Section 27–10–24, N.D.C.C., authorizes an appeal from "any final order adjudging a person guilty of a criminal or civil contempt," without awaiting entry of a judgment in the underlying action. *Schmidt v. Thompson*, 347 N.W.2d 315 (N.D.1984); *State ex rel. Morrill v. Massey*, 10 N.D.

154, 86 N.W. 225 (1901).[1] Although the merits of the underlying action remain unresolved, certification under Rule 54(b), N.D.R.Civ.P., is unnecessary. Rule 54 does not apply to claims that have nothing to do with the merits of a case. Instead, the rule "applies to decisions which finally dispose of causes of action, as opposed to matters collateral to the merits of a case." *Rogelstad v. Farmers Union Grain Terminal Ass'n, Inc.*, 224 N.W.2d 544, 548 (N.D.1974). The rule applies "to claims in the sense of the substantive right being asserted—the cause of action—rather than requests that are incidental to the procedure for obtaining a judicial award and enforcing it." 10 Charles A. Wright *et al.*, *Federal Practice and Procedure: Civil 2d* § 2658.4 (1983). The order finding Beste guilty of contempt is a final order, incidental to the procedure for obtaining a judgment in the action, collateral to the merits of the case, and specifically made appealable by a special statute. Consequently, the order is appealable.

■ Beste contends that the temporary restraining order issued on December 5, 1990, expired by operation of law because a hearing was not held within six months in accordance with § 32–06–03, N.D.C.C., which says:

"The injunction may be granted at the time of commencing the action, ... In no case shall a longer period than six months elapse before the hearing of the merits of the case shall be had for the purpose of deciding the question as to the justice or necessity of making the temporary restraining order permanent."

The six-month limitation imposed by § 32–06–03, N.D.C.C., can be waived by a party who objects to making a temporary order permanent. *Tyler v. Porter*, 230 N.W.2d 612 (N.D.1975).

---

1. Immediate appealability of a contempt order in our state practice contrasts with the practice in federal courts. Federal civil contempt orders are not ordinarily immediately appealable. *International Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Eastern Airlines, Inc.*, 849 F.2d 1481 (D.C.Cir.1988); *Combs v. Ryan's Coal Co.*, 785 F.2d 970 (11th Cir.1986). There are exceptions. A contempt order imposing a fine or penalty that may not be avoided by some other form of compliance may be appealed immediately. *Combs, supra.* An order finding a nonparty witness in contempt is appealable without awaiting a judgment in the underlying action. *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988). See generally, 17 C.J.S. *Contempt* § 114 (1963).

At the hearing on January 21, 1991, counsel for Beste told the court that the parties had agreed that "pending the resolution of this matter, which we hope will take place at closing possibly this week, next week at the latest, we have agreed that the temporary restraining order stay in place until that time." In response to a question by the court, counsel for Beste said that the temporary restraining order was to remain in effect until the court "hear[d] from" counsel. Beste agreed that the temporary restraining order was to "stay in place" until "resolution of this matter" or until the court "hear[d] from" counsel, thereby waiving the six-month limit of § 32–06–03, N.D.C.C. The underlying action brought by Ronngren has not yet been resolved and Beste's motion to dissolve the temporary restraining order has been denied. We conclude that the temporary restraining order issued on December 5, 1990, did not expire by operation of law upon the passage of six months.

■ In addressing the subject of Beste's forcible detainer action in county court to force the removal of Ronngren's base station from Beste's building, the district court spoke of "the exercise of unlimited and unlimitable jurisdiction of the district court." Beste argues that "[a] District Court does not have unlimited and unlimitable jurisdiction to issue an injunction" and contends that the district court abused its discretion in enjoining him "from in any way moving or disabling the base station of the Plaintiff ... until further order" of the court and in ordering him to dismiss the actions he filed in county court and small claims court. While the district court's statement exaggerates its authority, we need only determine if the district court abused its discretion in preliminarily enjoining Beste from moving or disabling Ronngren's base station and ordering Beste to dismiss his actions in county court and small claims court. *See, e.g., Vorachek v. Citizens State Bank*, 461 N.W.2d 580 (N.D.1990); *Fargo Women's Health Organization v. Larson*, 381 N.W.2d 176 (N.D.), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986); *Advanced Business Tel., Inc. v. Professional Data Processing, Inc.*, 359 N.W.2d 365 (N.D.1984).

The temporary restraining order restrained Beste from "interfering with the operation of the business known as the Grand Forks Answering Service" or from "taking any action ... designed to impede, obstruct or in any way cause a delay in the delivery of services to the customers or clientele of said business." After Ronngren moved her office to another location, Beste threatened to remove Ronngren's base station from the building she had been renting from Beste. Beste also filed a forcible detainer action in county court to force the removal of the base station. Counsel for Ronngren told the court at the hearing on June 19, 1991, that "the base station must be in close proximity to the antenna that is on the tower at 18th and Dyke," that "unless that base station stays in close proximity to that antenna on that tower, [Ronngren] will not be able to provide her services to her customers" and that Beste had agreed that the base station could remain in his building. Although counsel for Beste disputed the assertion that Beste had agreed that the base station could remain, he did not dispute the assertion that it had to be "in close proximity to the antenna that is on the tower at 18th and Dyke" or Ronngren would not be able to provide services to her customers. The district court found:

"The existence and operational functioning of that transmitter or base station has been shown to be an integral part of the functioning link of communications required to make the business work, so if a county court were to issue a forcible detainer authorization with a writ of restitution attached authorizing the sheriff or anybody else to take that machine out and make the disconnections, it would have the effect of putting the plaintiff's business out of the air, off line, and would defeat the purpose of the contract for which Mr. Beste has received $325,000 and for which he would and continues to receive[ ] payments...."

In view of the evidence and arguments placed before the district court and its find-

ings, we are not persuaded that the district court abused its discretion in enjoining Beste from moving or disabling the base station.

■ Beste also argues that the district court abused its discretion in ordering him to dismiss his forcible detainer action and his $240 small claims court action because such actions are authorized by law and because "[a] more appropriate and equitable remedy would have been for the district court to stay the proceedings in county court." The record does not show that Beste requested a stay of proceedings rather than a dismissal. The fact that the actions filed by Beste are authorized by law does not end the inquiry. Section 32–06–02(2), N.D.C.C., provides that an injunction may be granted to restrain an "act to be done in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual." Section 32–05–04(3), N.D.C.C., authorizes an injunction if "restraint is necessary to prevent a multiplicity of judicial proceedings." As the district court observed, one of the objects of equity is to avoid a multiplicity of suits and Beste's filing of additional actions related to the contractual rights already in issue in this case did multiply the proceedings. We are not persuaded that the district court abused its discretion in ordering Beste to dismiss the actions he filed in county court and small claims court.

■ Beste contends that the district court erred in finding him in contempt of court. We agree because we conclude that the temporary restraining order did not clearly prohibit Beste from filing lawsuits against Ronngren.

■ A trial court's decision on whether or not a contempt has been committed "should not be disturbed unless there is a plain abuse of discretion." *Bergstrom v. Bergstrom*, 320 N.W.2d 119, 121 (N.D. 1982).

The power of courts to punish contempts was "actually exercised as early as the annals of our law extend." 4 William Blackstone, *Commentaries* \*286. Our code continues that tradition. Section 27–

10–03(3), N.D.C.C., says that a court may punish "disobedience to any lawful order, judgment, or process of the court" as a civil contempt. Under § 27–10–04, N.D.C.C., the range of punishment for contempt includes fines, imprisonment, and the assessment of costs and expenses incurred by opposing parties.

■ The power of judicial contempt is not only potent but "deadly," if "it is founded upon a decree too vague to be understood." *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236, 245 (1967). *International Longshoremen's Ass'n, supra*, dealt with contempt in relation to Rule 65(d), F.R.Civ.P., which specifically requires that injunctions and restraining orders "be specific in terms" and "describe in reasonable detail ... the act or acts sought to be restrained." Its rationale, however, is just as valid in situations in which there is a need for clarity, although no statute or procedural rule expressly requires clarity in expression. To hold someone in contempt for violating a court order, the order must have been clear, specific and unambiguous. *See, e.g., International Longshoremen's Ass'n, supra*, 389 U.S. at 76, 88 S.Ct. at 208 (orders must be such that "those who must obey them will know what the court intends to require and what it means to forbid"); *In re Weeks*, 570 F.2d 244 (8th Cir.1978) (the court's order must be specific); *Berry v. Midtown Serv. Corp.*, 104 F.2d 107 (2nd Cir.1939) (the order should inform in definite terms the duties thereby imposed); *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tx.1967) (the order "must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him"); 14 Cal.Jur.3rd, *Contempt* § 24 (1974) (the order must express "in clear, specific, and unequivocal language the act required"); 14 Cal.Jur.3rd, *supra* § 25 ("acts forming the basis of the charge must be clearly and specifically prohibited by the terms of the order, for contempt cannot be

predicated upon violation of an ambiguous or uncertain order").

The temporary restraining order issued by the district court on December 5, 1990, did not clearly and specifically prohibit Beste from filing suit against Ronngren. Its lack of clarity undermines the district court's finding of contempt for its violation. The order restrained Beste from "interfering with the operation" of Ronngren's business and from "taking any action which is designed to impede, obstruct or in any way cause a delay in the delivery of services" to Ronngren's customers. That language does not clearly, specifically, unambiguously, definitely and unequivocally prohibit Beste from filing lawsuits against Ronngren. Furthermore, the mere act of filing a lawsuit, without more, may not interfere with the operation of Ronngren's business or impede, obstruct or delay the delivery of services to Ronngren's customers. We conclude that the district court abused its discretion in finding Beste in contempt of the temporary restraining order.

The order is reversed insofar as it finds Beste in contempt of the temporary restraining order and assesses attorney fees against him as a sanction for the contempt. The order is affirmed in all other respects. The matter is remanded for entry of an amended order in accordance with this opinion.

ERICKSTAD, C.J., and VANDE WALLE and MESCHKE, JJ., and O'KEEFE, District Judge, concur.

O'KEEFE, D.J., sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON, not being a member of this Court at the time this case was heard, did not participate in this decision.