Endersbe v. Endersbe, 555 N.W.2d 580 (N.D. 1996)|N.D. Supreme Court|
Endersbe v. Endersbe, 555 N.W.2d 580 (N.D. 1996)
[Go to Documents]
Filed Nov. 13, 1996
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
Jarod C. Endersbe, Plaintiff and Appellant
v.
Tanya D. Endersbe, n/k/a Tanya D. Dahl, Defendant and Appellee
Civil No. 960122
Appeal from the District Court of McLean County, South Central Judicial District, the Honorable James M. Vukelic, Judge.
REVERSED IN PART AND REMANDED.
Opinion of the Court by VandeWalle, Chief Justice.
James J. Coles, Snyder Coles Lawyers, Norwest Bank Building, Suite 613, P.O. Box 1321, Bismarck, ND 58502-1321, for plaintiff and appellant. Submitted on brief. Monte L. Rogneby, Kapsner and Kapsner, 304 East Rosser Avenue, P.O. Box 7009, Bismarck, ND 58507-7009, for defendant and appellee. Submitted on brief.
[555 N.W.2d 581]
Endersbe v. Endersbe
Civil No. 960122
VandeWalle, Chief Justice.
Jarod Endersbe, the Plaintiff, appealed from the trial court's Order of Contempt holding him in contempt and sentencing him to a ten day prison term, with all but twenty hours suspended. Jarod claims the trial court abused its discretion when creating the twenty hour sentence because this incarceration is contrary to North Dakota's contempt of court statute, N.D.C.C. Chapter 27-10 and violates his due process rights. We reverse, in part, and remand.
Jarod and Tanya Endersbe were divorced on January 19, 1995. In the divorce decree, Jarod was ordered to pay Tanya spousal support in the amount of $800.00 per month for forty-eight months, as well as $500.00 per semester for four years as educational support. At the time the divorce action was commenced, Jarod was working in Bismarck, North Dakota, for Prudential Insurance Company, earning between $70,000.00 and $90,000.00 a year.
Following the divorce, Jarod remarried and relocated to Sioux Falls, South Dakota. This move resulted in an unanticipated salary reduction which caused a financial strain. Jarod filed for bankruptcy in September of 1995. He listed his 1994 income as $65,000.00, with monthly expenses, including the $800.00 in spousal support, of $4,353.00. Jarod was in arrears with his spousal support payments in the amount of $2,900.00.
Jarod moved to modify the spousal support provisions in November of 1995. He sought a reduction of the monthly spousal support payments because "a substantial change [] occurred in the financial circumstances of the plaintiff . . . ." Tanya responded with a motion to find Jarod in contempt for nonpayment of spousal support. The trial court denied both motions, stating proper grounds for modification had not been shown and Jarod would not be held in contempt, unless he "[did] not pay the full amount due and owing within thirty days of entrance of this Order, and Defendant moves for contempt . . . ."
Jarod did not comply with this order. Tanya filed a Motion for Determination of Contempt and Imposition of Sanction on April 2, 1996. The trial court granted this motion on May 2, 1996 and held Jarod in contempt. Jarod was sentenced to 10 days incarceration at the McLean County Jail, with all but twenty hours suspended, provided Jarod sought "a loan from three financial institutions within the next 30 days and provide[d] proof to the clerk of court for McLean County if he [was] unable to obtain said loans for purposes of paying the arrearages and spousal support owed defendant." The twenty unsuspended hours of the incarceration was unconditional. Jarod was required to serve this time regardless of his ability or inability to obtain a loan. Jarod challenges the twenty hour sentence on appeal.
When reviewing a contempt sentence, the ultimate determination of whether a contempt charge exists is within the lower court's discretion. City of Grand Forks v. Dohman, 552 N.W.2d 69, 70 (N.D. 1996); Mehl v. Mehl, 545 N.W.2d 777, 780 (N.D. 1996) (citing Ronngren v. Beste, 483 N.W.2d 191, 195 (N.D. 1992)). A finding of contempt will not be overturned unless there is a clear abuse of this discretion. Knoop v. Knoop, 542 N.W.2d 114, 116 (N.D. 1996); Spilovoy v. Spilovoy, 488 N.W.2d 873, 875 (N.D. 1992); Ronngren, 483 N.W.2d at 195 (quoting Bergstrom v. Bergstrom, 320 N.W.2d 119, 121 (N.D. 1982)). A trial court abuses its discretion when "it misinterprets or misapplies the law[]" or acts in an arbitrary, unreasonable, or unconscionable manner. Bachmeier v. Wallwork Truck Centers, 544 N.W.2d 122, 125 (N.D. 1996) (quoting City of Fargo v. Hector, 534 N.W.2d 821, 822 (N.D. 1995)). Dohman, 552 N.W.2d at 70-71 (stating the abuse of discretion standard).
Courts have had the power to punish contempt from the very beginning of our structured legal system. Ronngren, 483 N.W.2d at 195 (quoting 4 William Blackstone, Commentaries, *286). The power of courts to
[555 N.W.2d 582]
issue contempt charges is "not only potent but 'deadly,' if 'it is founded upon a decree too vague to be understood.'" Ronngren, 483 N.W.2d at 195 (quoting International Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967)).
North Dakota, in 1993, redrafted and recodified the state courts' contempt powers in N.D.C.C. Ch. 27-10. S.L. 1993, ch. 89, 10-13. This chapter "was intended to incorporate the analysis used by the United States Supreme Court and this court for determining the constitutional safeguards that attach to contempt proceedings." Blaesing v. Syvertson, 532 N.W.2d 670, 671 (N.D. 1995) (quoting State v. Mertz, 514 N.W.2d 662, 666 n.3 (N.D. 1994)).
One of the persistent difficulties involving contempt charges, which has sometimes resulted in vague orders, is whether the contempt charge was intended to be civil or criminal. SeeNote, North Dakota's New Contempt Law: Will it Mean Order in the Court?, 70 N.D.L.Rev. 1027, 1036-1037 (1994). It is important that the types of contempt be distinguished because criminal contempt proceedings are given greater constitutional due process safeguards than are civil contempt proceedings. Id. at 1033. Section 27-10-01.2, N.D.C.C., attempts to do away with this difficulty. It states any "court of record of this state may impose a remedial or punitive
[555 N.W.2d 583]
sanction for contempt of court under this chapter." Thus, a court, in imposing contempt, considers whether a remedial or punitive sanction is applicable. Different procedures apply for imposing the appropriate sanction. But under Chapter 27-10, remedial and punitive sanctions incorporate the traditional characteristics of civil and criminal contempt. See Note, 70 N.D.L.Rev. at 1045. These traditional views hold "in civil contempt, the sanction is conditional in nature so that contemnors . . . stand committed unless and until they perform an affirmative act." Baier v. Hampton, 417 N.W.2d 801, 805 (N.D. 1987) (citing Shillitani v. United States, 384 U.S. 364, 368 (1966)). A punitive sanction occurs when the sanction is intended to "punish the offender and vindicate the authority of the court . . . ." Baier, 417 N.W.2d at 805 (citing Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441 (1911)). See also State v. Stokes, 240 N.W.2d 867, 870 (N.D. 1976) (providing the civil/criminal distinction).
A remedial sanction is one which "includes a sanction that is conditioned upon performance or nonperformance of an act required by court order." N.D.C.C. 27-10-01.1(4). Remedial sanctions can be payment of money, forfeitures, or imprisonment. N.D.C.C. 27-10-01.4(1). A prison sentence is remedial only if it is conditional and the "contemnors carry '"the keys of their prison in their own pockets . . . ."'" Baier, 417 N.W.2d at 805 [citing Shillitani, 384 U.S. at 368 (quoting In re Nevitt, 117 F. 448, 461 (8th Cir. 1902))]. Punitive sanctions, however, are unconditional. Baier, 417 N.W.2d at 805. Thus, a punitive sanction is "a sanction of imprisonment if the sentence is for a definite period of time . . ." or a sentence which "is not conditioned upon performance or nonperformance of an act . . . ." N.D.C.C. 27-10-01.1(3). The most important factor which makes a sanction punitive is its unconditional nature; if the contemnor cannot purge the contempt by performance, the charge is punitive. See Mertz, 514 N.W.2d at 666 (citing Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 633 (1988)).
Under North Dakota law, a remedial sanction can be sought by the court or by a motion by one of the parties. N.D.C.C. 27-10-01.3(1)(a). The court can impose a remedial sanction after notice and a hearing. Id. Conversely, a proceeding for a punitive contempt sanction is brought by a complaint by the state's attorney of a county, the attorney general, or a special prosecutor appointed by the court. N.D.C.C. 27-10-01.3(1)(b). The proceeding for a punitive sanction can be requested by a party to the action. Id. When the complaint is filed, the alleged contemnor is entitled to a trial by jury in which the judge who originally presided over the case is disqualified. Id. However, when the contemptuous act occurs in the actual presence of the court, a punitive contempt sanction can be imposed by the judge. N.D.C.C. 27-10-01.3(2). The judge can immediately issue a punitive sanction to maintain order and "protect[] the authority and dignity of the court." Dohman, 552 N.W.2d at 70 (quoting N.D.C.C. 27-10-01.3(2)). On appeal, we determine if the trial court's Order of Contempt was remedial or punitive, and whether in issuing the Order, the dictates of N.D.C.C. 27-10-01.3 were followed.
Because the trial court's Order gave Jarod a ten day prison sentence for nonpayment of spousal support and suspended all but twenty hours of this sentence provided Jarod sought a loan and presented these records to the clerk of court, and because the twenty hours was unconditional, it appears the contempt sentence is both remedial and punitive. The suspended portion of the sentence is conditioned upon Jarod's compliance or noncompliance. As such, it is clearly remedial and the procedure followed by the trial court in imposing the sanction complies with the direction of N.D.C.C. 27-10-01.3(1)(a). Jarod does not attack it on appeal.
However, the twenty hours of incarceration ordered by the trial court is just as clearly punitive in nature. It is for a set period of time and is not conditioned upon any action by Jarod. There is nothing Jarod can do to purge this sentence. This punitive contempt sanction was issued by the trial court despite the fact the court did not follow the specified procedure for a punitive sanction. Tanya did not request a complaint to be filed from the state's attorney for McLean County, nor did Jarod's contempt take place in the actual presence of the court. Compare Dohman, supra, where we affirmed a contempt ruling made immediately after a party uttered several caustic remarks to the judge and jury in the course of the proceeding.
However, this is a much different situation than Dohman, for Jarod's actions did not occur in the court's presence. Nevertheless, the trial court imposed a punitive sanction. This portion of the sentence violates N.D.C.C. 27-10-01.3(1)(b)-(c) because the trial court sentenced Jarod for twenty hours of incarceration with no ability to purge the contempt. We therefore remand that portion of the order imposing twenty hours imprisonment. If the court determines a punitive sanction is appropriate, it should initiate the proper proceeding under N.D.C.C. 27-10-01.3(1)(b).
Gerald W. VandeWalle, C.J.
Herbert L. Meschke
Dale V. Sandstrom
William A. Neumann
Mary Muehlen Maring