2001 ND 209

**CONSOLIDATED TELEPHONE COOPERATIVE, Plaintiff and Appellant,**

v.

**WESTERN WIRELESS CORPORATION, Defendant and Appellee,**

and

**North Dakota Public Service Commission, Defendant.**

**No. 20010146.**

Supreme Court of North Dakota.

Dec. 28, 2001.

---

Michael J. Maus (argued), Hardy, Maus & Nordsven, P.C., Dickinson, N.D., and Michael A. Bosh (appeared), Pringle & Herigstad, P.C., Minot, N.D., for plaintiff and appellant.

Mark J. Ayotte (argued), Lisa M. Agrimonti (on brief), Briggs and Morgan, P.A., St. Paul, MN, and Thomas D. Kelsch (appeared), Kelsch, Kelsch, Ruff & Kranda, Mandan, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Consolidated Telephone Cooperative ("Consolidated") appealed from a judgment upholding the Public Service Commission's ruling that Western Wireless Corporation ("Western") need not obtain a certificate of public convenience and necessity before offering wireless residential service in Regent. We conclude the Commission's finding that Western's wireless residential service is a commercial mobile radio service as defined by federal law is supported by a preponderance of the evidence. We further conclude the Commission correctly ruled Western need not obtain a certificate of public convenience and necessity under N.D.C.C. ch. 49–03.1 for its wireless residential service because that requirement is preempted by 47 U.S.C. § 332(c)(3)(A) of the Communications Act of 1934, as amended. We, therefore, affirm.

## I

[¶ 2] Consolidated is an incumbent local exchange carrier headquartered in Dickinson that provides landline local exchange telephone service to customers in and around Regent in southwestern North Dakota. Consolidated has acquired certificates of public convenience and necessity from the Commission under N.D.C.C. ch. 49–03.1 to provide this service. Western, also known as Cellular One, provides mobile cellular telephone service to customers in North Dakota under licenses issued by the Federal Communications Commission ("FCC"). In August 1998, Western requested direct interconnection and direct inward dialing numbers from Consolidated at Regent, and Consolidated provided those services for Western. On January 7, 1999, Western began offering wireless residential service to its customers in Regent to compete with the local exchange service provided by Consolidated. On January 11, 1999, Consolidated disconnected the service and telephone numbers that were being used for interconnecting Western's customers with Consolidated's local exchange service network, resulting in Western's customers being unable to receive local telephone calls.

[¶ 3] On January 15, 1999, Western filed a complaint with the Commission, alleging Consolidated's actions violated state and federal law. Consolidated alleged in its answer and counterclaim that Western could not offer wireless residential service to its Regent customers unless Western obtained a certificate of public convenience and necessity from the Commission. Following an administrative hearing, the Commission found Consolidated violated N.D.C.C. §§ 49–21–07 and 49–21–10, and N.D. Admin. Code § 69–09–05–02, and fined the company $15,000, with $13,500 of the amount suspended on the

condition Consolidated have no other violations for a two-year period. The Commission dismissed Consolidated's counterclaim, ruling Western's wireless residential service was a commercial mobile radio service as defined by federal law, thereby rendering the Commission without authority to require Western to comply with the certificate of public convenience and necessity law.

[¶ 4] Consolidated appealed to the district court, requesting it to reopen the record so the Commission could review additional evidence. The district court granted Consolidated's request and remanded the case to the Commission for reconsideration of its decision in light of the additional evidence. The Commission held a second hearing on the matter on September 26, 2000, considered the additional evidence, and reaffirmed its earlier ruling. Consolidated appealed from the Commission's decision, and the district court affirmed.

## II

[¶ 5] On appeal, Consolidated argues the Commission erred in finding Western's wireless residential service qualifies as a commercial mobile radio service under federal law and in ruling North Dakota's certificate of public convenience and necessity law is preempted by federal law.

[¶ 6] When an administrative agency decision is appealed to the district court and then to this Court, we review the decision of the agency and look to the record compiled before the agency. *Northern States Power Co. v. North Dakota Pub. Serv. Comm'n*, 502 N.W.2d 240, 242 (N.D.1993). Our review of an agency decision is governed by N.D.C.C. § 28–32–46,[1] which requires us to affirm unless:

---

1. A court's standard of review of administra-    tive agency decisions was formerly governed

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 7] We will affirm the Commission's findings of fact if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence. *Aggie Inv. GP v. North Dakota Pub. Serv. Comm'n*, 470 N.W.2d 805, 813 (N.D.1991). Questions of law, including an interpretation of a statute, are fully reviewable on appeal. *Klein v. North Dakota Workers Comp. Bureau*, 2001 ND 170, ¶ 6, 634 N.W.2d 530. However, we give some deference to a reasonable interpretation of a statute by the agency responsible for enforcing it, and give appreciable deference to agency expertise if the subject matter is highly technical. *Cass County Elec. Coop. Inc. v. Northern States Power Co.*, 518 N.W.2d 216, 220 (N.D. 1994).

A

[¶ 8] Some background about regulation of the telecommunications industry is necessary to fully understand the issues on appeal. Telecommunications companies are regulated by state law. *See* N.D.C.C. ch. 49–21. Section 49–21–08, N.D.C.C., provides in part:

> Whenever any telecommunications company furnishes adequate local exchange telecommunications service and supplies the reasonable wants of the people of the city or community in which it is operating, and complies with the orders of the commission, the commission shall not grant to any other telecommunications company the right to compete with such telecommunications company in the provision of local exchange telecommunications service until after a public hearing of all parties interested, and a finding by the commission that the public convenience and necessity may require such competing plant.

Therefore, a telecommunications company generally must apply for a certificate of public convenience and necessity under N.D.C.C. ch. 49–03.1 if it wishes to compete with another company furnishing adequate local exchange telecommunications service. *See generally Shark v. U.S. West Communications, Inc.*, 545 N.W.2d 194, 195–96 (N.D.1996).

[¶ 9] Before 1993, the regulation of wireless telecommunications services was divided between federal and state authorities, largely along an interstate/intrastate line. *Ball v. GTE Mobilnet of California,*

by N.D.C.C. § 28–32–19. Section 28–32–19, N.D.C.C. was recodified as N.D.C.C. § 28–32–46 and amended to include factors 7 and 8.

*See* 2001 N.D. Sess. Laws ch. 293, § 12; 2001 N.D. Sess. Laws ch. 296, § 3.

81 Cal.App.4th 529, 96 Cal.Rptr.2d 801, 804 (2000). The FCC distinguished between common carrier service and private carrier service, and regulated the former to a much greater degree than the latter. *Connecticut Dep't of Pub. Util. Control v. Fed. Communications Comm'n,* 78 F.3d 842, 845 (2nd Cir.1996). Recognizing the rapid growth of the cellular telecommunications industry, Congress, in 1993, dramatically revised the regulation of that industry by amending the Communications Act of 1934 ("Act") in the Omnibus Budget Reconciliation Act of 1993; Pub.L. No. 103–66, 107 Stat. 312 (1993). *Tenore v. AT & T Wireless Services,* 136 Wash.2d 322, 962 P.2d 104, 110 (1998). Congress created new statutory classifications of "commercial" and "private" mobile radio services ("CMRS" and "PMRS," respectively), and directed the FCC to implement these categories in its regulations and provide for comparable regulation of substantially similar CMRS systems. *Cellnet Communications, Inc. v. Fed. Communications Comm'n,* 149 F.3d 429, 433 (6th Cir.1998); *see also Connecticut Dep't of Pub. Util. Control,* 78 F.3d at 846 (noting "congressional intent of creating regulatory symmetry among similar mobile services"). To foster the growth and development of cellular and related mobile wireless communications that, by their nature, operate without regard to state lines, *Ball,* 96 Cal. Rptr.2d at 804, Congress also enacted 47 U.S.C. § 332(c)(3)(A):

> Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services. Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates. Notwithstanding the first sentence of this subparagraph, a State may petition the [FCC] for authority to regulate the rates for any commercial mobile service and the [FCC] shall grant such petition if such State demonstrates that—
>
> (i) market conditions with respect to such services fail to protect subscribers adequately from unjust and unreasonable rates or rates that are unjustly or unreasonably discriminatory; or
>
> (ii) such market conditions exist and such service is a replacement for land line telephone exchange service for a substantial portion of the telephone land line exchange service within such State.
>
> The [FCC] shall provide reasonable opportunity for public comment in response to such petition, and shall, within 9 months after the date of its submission, grant or deny such petition. If the [FCC] grants such petition, the [FCC] shall authorize the State to exercise under State law such authority over rates, for such periods of time, as the [FCC] deems necessary to ensure that such rates are just and reasonable and not unjustly or unreasonably discriminatory.

[¶ 10] Congress had two principal objectives in enacting this state preemption provision: (1) to ensure that similar mobile services are subject to consistent regulatory treatment; and (2) to impose only the level of regulation necessary to promote competition and protect mobile communications customers. *Bell Atlantic Mobile,*

*Inc. v. Dep't. of Pub. Util. Control,* 253 Conn. 453, 754 A.2d 128, 132 (2000). Amendments to the Act since 1993 have further emphasized the intention of Congress to foster competition in local and long distance telephone markets by neutralizing the competitive advantage inherent in incumbent carriers' ownership of the physical networks required to supply telecommunications services. *U.S. West Communications, Inc. v. Washington Utilities and Transp. Comm'n,* 255 F.3d 990, 992 (9th Cir.2001). Congress intended to provide a pro-competitive, deregulatory national policy framework designed to accelerate the private sector deployment of advanced telecommunications and information technologies and services, and to stop local authorities from keeping wireless providers tied up in the hearing process. *See, e.g., Sprint Spectrum L.P. v. Town of Easton,* 982 F.Supp. 47, 49–50 (D.Mass.1997); *Westel–Milwaukee Co., Inc. v. Walworth County,* 205 Wis.2d 244, 556 N.W.2d 107, 109 (App.1996).

[¶ 11] Congress has defined the statutory term "mobile service" as:

> a radio communication service carried on between mobile stations or receivers and land stations, and by mobile stations communicating among themselves, and includes (A) both one-way and two-way radio communication services, (B) a mobile service which provides a regularly interacting group of base, mobile, portable, and associated control and relay stations (whether licensed on an individual, cooperative, or multiple basis) for private one-way or two-way land mobile radio communications by eligible users over designated areas of operation, and (C) any service for which a license is required in a personal communications service established pursuant to the proceeding entitled "Amendment to the Commission's Rules to Establish New Personal Communications Services"

(GEN Docket No. 90–314; ET Docket No. 92–100), or any successor proceeding.

47 U.S.C. § 153(27). The statutory term "mobile station" is defined in 47 U.S.C. § 153(28) as "a radio-communication station capable of being moved and which ordinarily does move." Cellular telephone services fall within the definition of "mobile service." *Gilmore v. Southwestern Bell Mobile Systems, Inc.,* 156 F.Supp.2d 916, 920 n. 3 (N.D.Ill.2001).

[¶ 12] The FCC has been given broad preemption authority under the Act to regulate carriers for the public convenience and necessity. *GTE Serv. Corp. v. Fed. Communications Comm'n,* 224 F.3d 768, 770 (D.C.Cir.2000); *Cellular Phone Taskforce v. Fed. Communications Comm'n,* 205 F.3d 82, 96 (2nd Cir.2000). The FCC has the authority to make rules to fill any gap in the Act left by Congress, provided the FCC's construction of the statutes is reasonable. *Iowa Utilities Bd. v. Fed. Communications Comm'n,* 219 F.3d 744, 752 (8th Cir.2000), *cert. granted,* 531 U.S. 1124, 121 S.Ct. 878, 148 L.Ed.2d 788 (2001). In the exercise of its authority, the FCC has promulgated 47 C.F.R. § 22.99, which defines a "mobile station" as "[o]ne or more transmitters that are capable of operation while in motion."

[¶ 13] The FCC has also issued orders further defining what it considers to be CMRS and has indicated that services having both fixed and mobile capabilities fall within the statutory definition. In a 1994 order, *In the Matter of Implementation of Sections 3(n) and 332 of the Communications Act Regulatory Treatment of Mobile Services,* Second Report and Order, GN Docket No. 93–252, FCC 94–31, 9 FCC Rcd. 1411, ¶ 38 (March 7, 1994), the FCC said:

38. We also agree with Rockwell that satellite services provided to or from a transportable platform that cannot move when the communications service is offered should not be included within the definition of mobile service. These fixed services are used to provide disaster relief, temporary communications for news reporters and expeditions, and temporary communications in remote areas and cannot be used in a mobile mode. *Services provided through dual-use equipment, however, such as Inmarsat–M terminals which are capable of transmitting while the platform is moving, are included in the mobile services definition.* We also agree with New York that the substitution of a radio loop for a wire loop in the provision of BETRS does not constitute mobile service for purposes of our definition. As the Commission noted in the BETRS proceeding, this service was intended to be an extension of intrastate basic exchange telephone service. Thus, the radio loop merely takes the place of wire or cable, which in rural and geophysically rugged areas is often prohibitively expensive to install and maintain.

(footnote omitted; emphasis added). In a 1996 order, *In the Matter of Amendment of the Commission's Rules to Permit Flexible Service Offerings in the Commercial Mobile Radio Services,* First Report and Order and Further Notice of Proposed Rule Making, WT Docket No. 96–6, FCC 96–283, 11 FCC Rcd. 8965, ¶ 7 (Aug. 1, 1996), the FCC reiterated:

7. The current rules also place some limits on the ability of licensees on CMRS spectrum to offer fixed services, however. *In reviewing the definition of "mobile service" under the Communications Act, "we have concluded that services having both fixed and mobile capabilities, e.g., services provided through dual-use equipment, fall within the statutory definition."* In contrast, we have concluded that services that are solely fixed in nature, e.g., fixed point-to-point services such as Basic Exchange Telephone Radio Service (BETRS), do not constitute "mobile service" within the meaning of the statute.

(footnotes omitted; emphasis added).

### B

[¶ 14] The hearings before the Commission proceeded against this legal backdrop. Western argued its wireless residential service constituted CMRS under federal law and FCC rulings and regulations because it functioned as a hybrid fixed/mobile service. Western's special projects manager described the "tellular" device used with the system:

A. Wireless residential service is provisioned over the company's existing cellular network infrastructure. Wireless residential service and other cellular service offerings are provided over the same network switching equipment, the same interconnection facilities, the same dedicated trunking facilities, the same cell site, the same antenna towers, the same cell site radio equipment and the same cellular spectrum.

. . . .

A. Instead of using a handheld phone, a bag phone or other equipment typically used by cellular customers, wireless residential service customers use a device the size of a small laptop computer that consists of a standard cellular antenna to transmit and receive signals in the same manner as a handheld phone. The device enables customers to use their existing telephones to place and receive calls. The device operates using AC power or battery backup.

. . . .

A. An important attribute of wireless residential service is its mobility. Unlike landline service, and like conventional cellular service, wireless residential service is a service associated with a customer, not a specific location. This feature of wireless residential service allows a customer to take its phone to a neighbor's house, to the office, to another building or out in the field. Because the unit operates on either AC power or battery backup, it is mobile.

[¶ 15] Consolidated argued the "tellular" device is not CMRS under the federal statutory definition because it ordinarily does not move and was not intended for mobile use. Consolidated argued the device was heavy and awkward compared to handheld wireless phones and must be connected to a traditional telephone set, and there are no handles or other conveniences indicating the unit was designed or intended for mobile use. Moreover, Consolidated relied on the Western wireless service agreement signed by customers which stated: "The Unit is intended to remain stationary. Removing the Unit from the location where it was installed by us is a violation of this Agreement and may result in substantial additional fees to you, failure of the Unit, and/or termination of this Agreement." Western's manager of external affairs testified this language was inserted into the agreements by Western's sales and marketing group for the purpose of ensuring "optimum signal quality." She also testified Western knew of "some customers that were taking them and moving them from room to room within their house, ... moving them from inside the house to a garage or to a barn," but Western took no action to terminate the agreements. She testified this language was removed from service agreements effective February 2000, and existing customers entered into an addendum to the agreements which removed the restrictive language from their service agreements.

[¶ 16] The Commission found Consolidated did not prove Western's wireless residential service was "a solely fixed service," but found the service "has mobile capabilities and is therefore a mobile service." The Commission ruled Western's "intent regarding mobility and its attempt to restrict mobility prior to February, 2000, do not create, eliminate or revise the technical capabilities of the residential wireless service...." The Commission therefore concluded, "[a]s a mobile service, [wireless residential service] is exempt from state entry regulation."

## C

[¶ 17] Express preemption of state law occurs when Congress specifically declares in a federal statute that it intends to preempt state law in a particular field. *See State v. Liberty Nat'l Bank and Trust Co.*, 427 N.W.2d 307, 309 (N.D. 1988); *Northwest Airlines v. State Bd. of Equalization*, 358 N.W.2d 515, 517 (N.D. 1984). The plain language of 47 U.S.C. § 332(c)(3)(A) manifests a clear congressional intent to preempt the field with respect to rates and market entry of commercial and private mobile services. *Bryceland v. AT & T Corp.*, 122 F.Supp.2d 703, 707 (N.D.Tex.2000). There is no dispute in this case that if Western's wireless residential service qualifies as CMRS under federal law, the requirement of a certificate of public convenience and necessity under N.D.C.C. ch. 49-03.1 would constitute state market entry regulation that is preempted by 47 U.S.C. § 332(c)(3)(A).

[¶ 18] A reasoning mind reasonably could have determined by the weight of the evidence in the record that Western's wireless residential service is not a solely fixed service, but has mobile capabilities

regardless of Western's attempt to restrict mobility in the services agreements signed by customers. Consolidated argues that Western's wireless residential service nevertheless is not a CMRS under federal law because the statutory phrase, "ordinarily does move," contained in the definition of "mobile station" under 47 U.S.C. § 153(28), has been wholly ignored by the Commission in its analysis of this case. Consolidated argues although Western's wireless residential service technically may be capable of moving, it is not a mobile station under the federal statutory definition because Western has made no showing that the service "ordinarily does move." Consolidated contends the federal statutory definition must prevail over any FCC regulations or rulings which may appear to have done away with the "ordinarily does move" requirement.

[¶ 19] Consolidated's argument that the Commission or this Court has the power to declare invalid, or to simply ignore, a questionable FCC regulation or interpretive ruling is incorrect. The federal courts of appeal have *exclusive* jurisdiction to review the FCC's declaratory rulings, policies, practices and regulations. *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1); *Fed. Communications Comm'n v. ITT World Communications, Inc.*, 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984); *United States v. Neset*, 10 F.Supp.2d 1113, 1114–15 (D.N.D.1998), *aff'd*, 235 F.3d 415 (8th Cir.2000). Unless the FCC's rulings and regulations have been appropriately challenged in the proper federal forum, we are not at liberty to review the FCC's statutory interpretation even if we doubted its soundness, and we must apply the rulings and regulations as written. *See U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir.2000); *In re Fed. Communications Comm'n*, 217 F.3d 125, 136–141 (2nd Cir.

2000); *United States v. Any and All Radio Station Transmission Equipment*, 207 F.3d 458, 463 (8th Cir.2000); *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 738 F.2d 901, 907 (8th Cir.1984), *vacated and remanded on other grounds*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 973 (1986). Because the FCC's regulations and rulings are not subject to "collateral attacks," *In re Fed. Communications Comm'n*, 217 F.3d at 139, whether the FCC has exceeded the authority granted by Congress in promulgating 47 C.F.R. § 22.99 and in its interpretive rulings and orders is a question the Commission and this Court have no jurisdiction to consider.

[¶ 20] Consolidated also argues the definition of "mobile station" in 47 C.F.R. § 22.99 is inapplicable in this case because the definitions in that section apply only to "Public Mobile Services." However, the definition of "Public Mobile Services" in 47 C.F.R. § 22.99 as "[r]adio services in which common carriers are authorized to offer and provide mobile and related fixed radio telecommunication services for hire to the public," is broad enough for the Commission to conclude it encompasses Western's services.

[¶ 21] Consolidated argues the Commission's decision is erroneous as a matter of law because a proposed presumption referenced in the FCC's 1996 order has since been rejected by the FCC. In *In the Matter of Amendment of the Commission's Rules to Permit Flexible Service Offerings in the Commercial Mobile Radio Services*, First Report and Order and Further Notice of Proposed Rule Making, WT Docket No. 96–6. FCC 96–283, 11 FCC Rcd. 8965, ¶ 39 (Aug. 1, 1996), the FCC said "we conclude that further development of the record is needed to resolve the issue of how fixed services allowed by this Report and Order should be regulated." The FCC explained:

47. Based on our review of the record in this proceeding, we believe it is premature to attempt a final comprehensive determination regarding the regulatory treatment of these various types of fixed services that may be offered by licensees. While some commenters argue that all of the fixed offerings described above should be treated as sufficiently related to CMRS to justify uniform regulatory treatment, we believe that a uniform approach would be premature at this time. Instead, we believe that the regulatory issues raised by this proceeding require further development of the record and more specific analysis related to the particular fixed service offerings that carriers develop. Therefore, we propose to refine the approach set forth in the Notice by seeking comment on additional guidelines for determining when fixed wireless services may fall within the scope of CMRS regulation.

48. At the outset, we emphasize that our decision to allow carriers to offer co-primary fixed services on spectrum allocated for CMRS does not alter in any way our regulatory treatment of fixed services that have been provided by CMRS providers under our prior rules. In the CMRS Second Report and Order, we stated that ancillary, auxiliary, and incidental services offered by CMRS providers fall within the statutory definition of mobile service, and are subject to CMRS regulation. We reaffirm that determination here. In our order today, however, we have broadened the potential scope of fixed services that may be offered by CMRS providers. We therefore seek further comment on the regulatory treatment of such fixed services that may not be considered ancillary, auxiliary or incidental to mobile service.

*Id.* at ¶¶ 47–48.

[¶ 22] In a 2000 order, *In the Matter of Amendment of the Commission's Rules to Permit Flexible Service Offerings in the Commercial Mobile Radio Services,* Second Report and Order on Reconsideration, WT Docket No. 96–6, FCC 00–246, 65 Fed.Reg. 49,199, ¶ 8 (July 20, 2000), the FCC refused to adopt "the rebuttable presumption" proposed in the 1996 First Report and Order and Further Notice of Proposed Rule Making. The FCC said:

> Just as we find the evolving nature of wireless services makes it inappropriate to adopt a bright-line test, we also find that the ongoing changes in technology and services make it difficult to set out in advance factors that we should consider in establishing such a presumption or otherwise determining the regulatory treatment of any particular fixed wireless or integrated fixed/mobile service. To the extent that a party requires a determination of whether or not a particular service that includes a fixed wireless component should be treated as CMRS, that party should petition the Commission for a declaratory ruling.

*Id.*

[¶ 23] Consolidated contends the Commission erred because Western's wireless residential service was not entitled to any presumption that it was mobile. However, the Commission did not find that Western's wireless residential service is a solely fixed service and, in any event, there is no indication in the record that the Commission gave presumptive effect to any of the evidence in these proceedings. The FCC determined the issue should be decided on a case-by-case basis, which is the analysis used by the Commission in this case. The Commission was not laboring under a misapprehension of the law.

[¶ 24] Consolidated also argues that none of the FCC's rulings and orders are applicable in this case because the FCC

has not ruled on whether Western's specific tellular device used with its wireless residential service is CMRS. Relying on *Louisiana Pub. Serv. Comm'n v. Fed. Communications Comm'n,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), Consolidated argues the FCC has not taken preemptive action with respect to the tellular unit and, therefore, state regulation of Western's wireless residential service is not preempted by federal law. We reject this argument.

[¶ 25] Under 47 U.S.C. § 332(c)(3)(A), states have no authority to regulate the rates and market entry of CMRS. The relevant inquiry here is not whether the FCC has specifically preempted state regulation of Western's wireless residential service, but whether Western's wireless residential service is CMRS, thus preempting state market entry regulation under 47 U.S.C. § 332(c)(3)(A). Although the FCC said in its 2000 order that a party could petition the FCC for a determination, if required, of whether a fixed wireless or integrated fixed/mobile service should be treated as CMRS, neither the parties nor the Commission petitioned the FCC in this case. Nevertheless, state regulatory bodies and state courts have concurrent jurisdiction to determine preemption questions arising under the Act. *See GTE Mobilnet of Ohio v. Johnson,* 111 F.3d 469, 478–82 (6th Cir.1997). Regulatory bodies and courts routinely interpret FCC regulations, rulings and orders. *See, e.g., Bell Atlantic Maryland, Inc. v. MCI Worldcom, Inc.,* 240 F.3d 279, 286 (4th Cir.), *cert. granted,* — U.S. ——, 121 S.Ct. 2548, 150 L.Ed.2d 715 (2001); *Hamilton,* 224 F.3d at 1055. The FCC's 1994, 1996 and 2000 orders are not product or service specific, but refer to products or services "such as" the specific products or services mentioned, and are obviously intended to provide guidance. We conclude the Commission had the authority to determine whether Western's wireless residential service was CMRS under federal law.

D

[¶ 26] In the exercise of its regulatory authority granted by Congress, the FCC has said telecommunications services provided through dual-use equipment and having both fixed and mobile capabilities fall within the statutory definition of "mobile service" under the Communications Act. The FCC's interpretation of federal law is not subject to collateral attack in this case. The Commission, exercising its expertise in a highly technical field, determined Western's wireless residential service has both fixed and mobile capabilities and constitutes commercial mobile radio service under federal law. The Commission's findings are supported by a preponderance of the evidence, and the findings support its conclusion that Western need not obtain a certificate of public convenience and necessity under N.D.C.C. ch. 49–03.1 because that market entry requirement is preempted by 47 U.S.C. § 332(c)(3)(A).

III

[¶ 27] The judgment is affirmed.

[¶ 28] GERALD W. VANDE WALLE, C.J., BRUCE BOHLMAN, D.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 29] The Honorable BRUCE E. BOHLMAN, D.J., sitting in place of SANDSTROM, J., disqualified.