WALLWORK LEASE & RENTAL CO., INC., Plaintiff and Appellee,

v.

Gene C. SCHERMERHORN, Jeffrey G. Schermerhorn, Doris A. Schermerhorn, Defendants and Appellants,

and

Rodney D. Ballard and Nancy J. Ballard, Defendants.

Civ. No. 11107.

Supreme Court of North Dakota.

Dec. 16, 1986.

Nilles, Hansen & Davies, Fargo, for plaintiff and appellee; argued by Leo F.J. Wilking.

Wefald & Baer, Hawley, Minn., and Bruce E. Aarestad, Fargo, for defendants and appellants; argued by Zenas Baer.

GIERKE, Justice.

Gene Schermerhorn, Jeffrey Schermerhorn, and Doris Schermerhorn appeal from a district court judgment holding them liable to Wallwork Lease and Rental Company [Wallwork] for the balance of a lease on grain-drying equipment. We affirm.

The Schermerhorns are Minnesota residents who in 1981 were engaged in farming. In 1981, Gene Schermerhorn, Jeffrey Schermerhorn, and Rodney Ballard ordered a grain dryer and related equipment from Northland Grain Dryers, Inc., of Alexandria, Minnesota. The equipment was delivered to the Schermerhorns' farm in Minnesota, and Northland agreed to arrange financing. Northland contacted Wallwork, which is located in Fargo, North Dakota, to prepare a lease for the equipment. A Wallwork representative presented the lease agreement to Rodney, Gene, and Jeffrey, who signed it in Minnesota. The Wallwork representative also obtained the signatures of Doris Schermerhorn and Nancy Ballard on a guaranty of the lease obligation.

The first annual payment required under the lease agreement was made personally in Minnesota to Wallwork's representative. No further payments were made on the lease, and Wallwork declared the lease in default in late 1982. This action was commenced in district court by service of a summons and complaint dated May 5, 1983.

The Schermerhorns were originally represented by attorney Robert Irvine, who engaged in various contacts with Wallwork's counsel regarding the action. In particular, counsel for the parties agreed to an indefinite extension of the time to answer, as evidenced by a letter dated June 14, 1983, from Irvine to Wallwork's counsel, which states in part:

"Just a note to remind you of the fact that you indicated that I did not have to put in an answer on this thing and that you were going to check the figures which you suspected were right."

In addition, there were discussions regarding possible settlement of the action, and the parties apparently cooperated in attempting to sell the equipment. After numerous unsuccessful attempts by Wallwork and the Schermerhorns to sell the property, it was finally sold in August 1983.

On February 10, 1984, Wallwork moved for a default judgment. The Schermerhorns, who had retained new counsel, moved for dismissal based upon lack of personal jurisdiction. Wallwork's motion for default judgment was denied as to the Schermerhorns,[1] and the Schermerhorns' motion for dismissal was denied. The case was subsequently tried to the court, and judgment was entered in favor of Wallwork against the Schermerhorns jointly and severally in the amount of $34,121.70.

The Schermerhorns allege on appeal that the trial court did not acquire personal jurisdiction over them;[2] that the trial court erroneously concluded that the agreement

---

1. The Ballards did not answer or otherwise appear, and the trial court ordered entry of a default judgment against them. The Ballards subsequently filed a bankruptcy petition and the district court entered an order closing the file as to the Ballards. They are not involved in this appeal.

2. Only Gene and Jeffrey challenge the court's jurisdiction. The guaranty signed by Doris included a provision by which she submitted to jurisdiction in the courts of North Dakota, and she does not challenge the court's exercise of personal jurisdiction over her.

between the parties was a lease rather than a security agreement; and that the trial court erred in finding that, if the agreement was a security agreement, Wallwork disposed of the collateral in a commercially reasonable manner.

We first address the jurisdictional issue. Gene and Jeffrey contend that the district court lacked personal jurisdiction over them and that Wallwork's action against them should have been dismissed. They contend that none of the bases for acquiring personal jurisdiction outlined in Rule 4, N.D.R.Civ.P., apply in this case. Wallwork essentially concedes that Gene and Jeffrey had no significant contacts with North Dakota, but contends that they submitted themselves to the jurisdiction of the court by entering a voluntary general appearance in the action. The trial court found that Gene and Jeffrey had appeared in the action through prior counsel and that they had thereby waived their objection to the court's exercise of personal jurisdiction.

Rule 4(b)(4), N.D.R.Civ.P., provides:

> "*Acquisition of Jurisdiction.* A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, or by voluntary general appearance in an action by any person either personally or through an attorney or any other authorized person."

In a recent case construing Rule 4(b)(4) we noted that the Rule was an adoption of principles which had been previously recognized. *Loken v. Magrum,* 364 N.W.2d 79, 82–83 (N.D.1985), *citing Tooz v. Tooz,* 78 N.D. 432, 50 N.W.2d 61 (1951), and *In re McIntyre's Estate,* 78 N.D. 10, 47 N.W.2d 527 (1951). Although decided before the adoption of our Rules of Civil Procedure, we believe the standards enunciated in *Tooz* and *McIntyre's Estate* provide guidance in determining whether the parties in this case made a voluntary general appearance within the purview of Rule 4(b)(4).

In *Tooz v. Tooz, supra,* 78 N.D. at 437, 50 N.W.2d at 65, we acknowledged the generally recognized rule:

> "It is the rule in this state, as it is in most jurisdictions, that one who invokes the authority of the court to determine a controversy on its merits thereby makes a general appearance.... In the absence of a previously made and properly preserved objection to the jurisdiction of the court, a general appearance amounts to a waiver of the right to object to the jurisdiction of the court over the person of the party so appearing." [Citations omitted.]

In *In re McIntyre's Estate, supra,* 78 N.D. at 26, 47 N.W.2d at 534, we stated:

> "[A]ny action of a party, except to object to the jurisdiction of the court over his person which recognizes the case as in court, will constitute a general appearance."

The question thus presented in this case is whether Gene and Jeffrey "recognized the case as in court" and generally appeared when their counsel engaged in settlement negotiations and secured an indefinite extension of time to answer.

Although we have found no North Dakota case law directly on point, courts in other jurisdictions have concluded that the commencement of settlement negotiations or securing an agreement which extends the time to plead constitutes a general appearance which waives jurisdictional defects. For example, in *Security Management, Inc. v. Schoolfield Furniture Industries, Inc.,* 275 S.C. 466, 272 S.E.2d 638, 639 (1980), the court, noting that "[i]t is generally held that an agreement or stipulation extending time to plead constitutes a general appearance," concluded:

> "Hickory obtained an extension for an unlimited time to answer or otherwise plead. No jurisdictional question was raised. Only after the period otherwise allowed for answering did Hickory purport to enter a special appearance. By seeking and obtaining the general extension, Hickory evidenced no intent to appear specially. Any objection to personal jurisdiction was therefore waived."

Similarly, in *Petty v. Weyerhaeuser Co.,* 272 S.C. 282, 251 S.E.2d 735 (1979), the

court held that a letter to the plaintiff's attorney from the defendant corporation's in-house counsel, stating his desire that the parties explore settlement possibilities prior to the filing of an answer, constituted a general appearance which waived jurisdictional defects. *See also People v. Estep,* 6 Ill.2d 127, 126 N.E.2d 637, 638 (1955) (" 'Any action on the part of the defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance.... A stipulation for a continuance constitutes a general appearance.' ") Numerous additional cases are collected in Annot., 77 A.L.R.3d 841 (1977).

We have given the term "appearance" a broad interpretation in the context of Rule 55, N.D.R.Civ.P., which requires that notice be given before a default judgment may be entered against a party who has appeared in the action. *See Wilson v. Wilson,* 364 N.W.2d 113 (N.D.1985) (where parties continued living together and discussed the pending action after the wife had filed for divorce, their conduct evidenced an appearance by the husband); *Svard v. Barfield,* 291 N.W.2d 434 (N.D.1980) (parties' meeting at restaurant after suit had been filed to negotiate the dispute constituted an appearance by the defendant); *Perdue v. Sherman,* 246 N.W.2d 491 (N.D.1976) (telephone call from defendant's counsel to plaintiff's counsel, followed by a letter summarizing that conversation, constituted an appearance). Although we recognize that the policy considerations underlying Rule 55 and Rule 4(b)(4) may significantly

vary, and that conduct which constitutes an "appearance" for purposes of Rule 55 might not necessarily constitute a "voluntary general appearance" for purposes of Rule 4(b)(4), we nevertheless believe that these cases lend support to our conclusion that a voluntary general appearance was made in the instant case.

Where a party through an attorney has secured an indefinite extension of time to answer and then engages in settlement negotiations spread over a period of nine months, the party has clearly "recognized the case as in court." We conclude that the trial court did not err in holding that Gene and Jeffrey had entered a voluntary general appearance and thereby submitted to the jurisdiction of the court pursuant to Rule 4(b)(4).[3]

The Schermerhorns contend that the trial court erred in holding that the agreement between the parties was a lease rather than a security agreement. They also assert that if the agreement was a security agreement the trial court erred in finding that Wallwork's disposition of the equipment was conducted in a commercially reasonable manner. We find it unnecessary to resolve the lease/security agreement dispute because we conclude that, even if the agreement between the parties constituted a security agreement, the trial court's finding of a commercially reasonable sale was not clearly erroneous.

Section 41-09-50(3), N.D.C.C. [U.C.C. § 9-504], provides that upon default a secured party may dispose of collat-

---

3. Our holding should not be read to imply that a request by counsel for a reasonable extension of time to answer will always constitute a waiver of jurisdictional defects. We recognize that counsel often receive pleadings from clients on the last day to interpose an answer, or when the attorney is in trial or away from the office, necessitating a request for an extension of time to answer. Under appropriate circumstances, such a request might not constitute a voluntary general appearance under Rule 4(b)(4) which waived the jurisdictional defect. In this case, however, with a request for an indefinite extension of time and settlement negotiations conducted over a period of nine months, the parties have clearly "recognized the case as in court"

and thereby entered a voluntary general appearance.

We also note that our decision is consistent with Rule 12(h), N.D.R.Civ.P., which states that failure to raise the defense of lack of personal jurisdiction in a Rule 12 motion or in a responsive pleading constitutes a waiver of the defense. Reading Rule 4(b)(4) and Rule 12(h) together, it is clear that a court acquires jurisdiction over a party who makes a voluntary general appearance in the action prior to raising the defense by motion or responsive pleading. Thus, a party cannot resurrect a personal jurisdiction defense once the court has acquired personal jurisdiction under Rule 4(b)(4) through a voluntary general appearance.

eral by public or private sale, but requires that every aspect of the sale be commercially reasonable. The trial court's determination whether a sale of collateral was conducted in a commercially reasonable manner is a finding of fact, and will be set aside on appeal only if clearly erroneous. *Advanced Irrigation, Inc. v. First National Bank of Fargo,* 366 N.W.2d 783, 786 (N.D.1985).

The Schermerhorns presented testimony from two employees of Northland Grain Dryers, Inc., who testified that the fair market value of the equipment at the time of the default in 1982 would have been approximately $45,000. The dryer was sold in August of 1983 to Shaw Construction for $26,000. The only other offer was from Northland Grain Dryers for $25,000.

Wallwork presented evidence documenting their efforts to sell the property, including advertising in a publication specifically targeted to farmers and contacts with dealers and individuals. Wallwork also presented evidence showing that the Schermerhorns had placed advertisements in an area newspaper and made personal contacts with potential buyers, and that the Schermerhorns had unsuccessfully attempted on two separate occasions to sell the equipment at auction. All of these efforts produced only Northland Grain Dryers' $25,000 offer and Shaw Construction's $26,000 offer.

 The Schermerhorns rely heavily upon the expert testimony that the equipment had a value of approximately $45,000 in 1982, a year before it was sold. Although testimony as to the value of the collateral at an earlier date may be relevant evidence to be considered by the trial court in determining whether the subsequent sale was commercially reasonable, Section 41-09-53(2), N.D.C.C., provides in part:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." [Section 41-09-53(2), N.D.C.C.]

 The trial court was called upon to reconcile conflicting evidence regarding the commercial reasonableness of the sale. Although the Schermerhorns' experts testified that in the fall of 1982 the equipment had a fair market value of approximately $45,000, they also testified that the market for grain drying equipment was adversely affected during 1983, when the equipment was finally sold. The court was also presented with evidence documenting the extensive efforts by the Schermerhorns and Wallwork to sell the property, culminating in the sale for $26,000. The trial court, in resolving the conflicting evidence, stated that the testimony of the Schermerhorns' experts regarding the fair market value of the equipment was not credible and concluded that the sale had been conducted in a commercially reasonable manner.

It is the exclusive function of the trial court to determine the credibility of witnesses and the weight to be given their testimony, and questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by this court. *Wastvedt v. State,* 371 N.W.2d 330, 334 (N.D.1985). We conclude that the trial court's finding on this issue is not clearly erroneous.

The judgment of the district court is affirmed.[4]

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

4. In his rebuttal at oral argument to this court counsel for the Schermerhorns attempted to raise an additional issue which had been raised in the trial court but which had not been briefed or raised in his main argument on appeal. We will not consider issues raised in this manner. *Cf. Shark v. Thompson,* 373 N.W.2d 859, 865 (N.D.1985) (where party provides no citations to authority or supportive reasoning to buttress an assertion the issue will be deemed waived); *Moran v. Moran,* 200 N.W.2d 263, 271 (N.D. 1972) (specification of error not supported by written argument in the brief is deemed abandoned).