Judith A. MEHL, Plaintiff and Appellee,

v.

Thomas D. MEHL, Defendant and Appellant.

Civil No. 950261.

Supreme Court of North Dakota.

April 8, 1996.

Judith A. Mehl, Fargo, pro se, submitted statement.

Daniel E. Bertsch, Assistant State's Attorney, Regional Child Support Enforcement Unit, Fargo, for plaintiff and appellee.

Thomas D. Mehl, Fargo, pro se.

VANDE WALLE, Chief Justice.

Thomas Mehl appealed from a district court order affirming a judicial referee's finding him in contempt of court for failure to pay court-ordered child support. We conclude the finding that Mehl is in arrears on child support payments is clearly erroneous because there is no evidence showing what amount, if any, is unpaid. We, therefore, reverse.

Thomas and Judith Mehl were divorced on January 11, 1991. Two of their five children, John and Mark, were minors at the time of the divorce proceedings, and Judith was awarded their physical custody. The decree ordered Thomas to pay child support of $400 per month, with payments to be made through the office of the Cass County Clerk of District Court. The support obligation was reduced to $50 per month in an Amended Judgment on September 4, 1991.

By request of the clerk of court, under Section 14–09–08.1(3), N.D.C.C., the district court issued an order to show cause on April 21, 1995, directing Thomas to appear at a hearing to show why he should not be held in contempt for failing to pay child support as required by the divorce decree. The show-cause hearing was held before a judicial referee on August 1, 1995. The referee found past due child support of $5,810 and concluded Thomas was in contempt of court for failing to obey the district court's child support order. The referee sentenced Thomas to serve thirty days in the county jail, with the entire sentence suspended for one year on the condition Thomas make $150 monthly support payments, including $100 per month toward arrearages, until his past due support is paid in full. Both Thomas and Judith requested the district court to review the judicial referee's decision. On October 5, 1995, the district court entered an order affirming the finding of contempt.

We have gleaned from the sometimes disconnected, incoherent, and rambling written and oral arguments of Thomas, the issues

which we discuss herein. Thomas challenges the authority of the State of North Dakota to enforce his child support obligation. The divorce decree requires Thomas to make support payments to the clerk of the district court, who then remits payments to Judith, as the custodial parent, or her assignee, pursuant to the statutory requirements of Section 14–09–08.1, N.D.C.C. Under subsection 14–09–08.1(3), N.D.C.C., the clerk of court is authorized to inform the district judge when support payments are in arrears and to request the judge to issue a citation for contempt of court against the delinquent obligor. Under Section 11–16–01(15), N.D.C.C., the state's attorney is authorized to assist the district court in enforcing compliance with a decree ordering payment of child support. The State clearly has statutory authority to enforce the support provisions of the decree.

■ Thomas also asserts Judith rescinded her assignment of rights for the Department of Human Services to seek reimbursement from Thomas for medical assistance provided to Judith for John and Mark. The Department's right to seek reimbursement for benefits provided to a child is derived not only from the assignment of rights given by the custodial parent but also by statute. *See Sprynczynatyk v. Celley,* 486 N.W.2d 230 (N.D.1992). Under Section 50–24.1–02.1, N.D.C.C., the Department is given a statutory right of assignment to seek reimbursement for medical assistance provided to needy persons. Under Section 50–09–06, N.D.C.C., any state agency providing AFDC (Aid to Families with Dependent Children) benefits is, likewise, given a statutory assignment to seek reimbursement from support payments made for the benefit of a child. By these laws, the legislature has clearly given state agencies who provide assistance to needy persons the right to be reimbursed for that assistance from persons who have support obligations to those receiving the assistance. Thomas's arguments on this issue are without merit.

■ Thomas also challenges the authority of a judicial referee to hear child support

enforcement cases. Judicial referees have statutory authority under Section 27–05–30(2), N.D.C.C., to hear cases of this nature. By authority of Art. VI, § 3, N.D. Const., and Section 27–05–30, N.D.C.C., this court adopted AR 13 of the Administrative Rules and Orders providing for "the qualifications, the extent and assignment of authority, procedure and the conduct of the role of judicial referees" in this State. Under AR 13, § 8, any party may request in writing to have a proceeding before a judicial referee heard by a district court judge. The record in this case shows that in past proceedings Thomas has availed himself of this right and requested the proceedings scheduled before a judicial referee to be heard, instead, by a district court judge. Thomas did not avail himself of that right for these show-cause proceedings. We conclude his attack in this appeal on the referee's authority is without merit.

■ Contempt proceedings are appropriate for enforcing court-ordered child support. Section 14–08.1–05(2), N.D.C.C.; *see also Heidinger v. Heidinger,* 426 N.W.2d 566 (N.D.1988). We explained the nature of contempt proceedings against an obligor who failed to pay court-ordered child support in *Baier v. Hampton,* 417 N.W.2d 801, 805 (N.D.1987):

> "Usually, ... the sanction is conditional in nature so that contemnors carry ' "the keys of their prison in their own pockets" ' and stand committed unless and until they perform an affirmative act.
>
> *       *       *       *       *       *
>
> "[The defendant's] failure to pay child support constitutes a duty which is yet within his power to perform. N.D.C.C. § 27–10–04(2). The purpose of the sanction that permitted [the defendant] to purge thirty days of the jail sentence by paying the past due child support was to coerce his payment of past due child support for the benefit of the children. He thus carried the keys to prison in his own pocket. The coercive purpose of that sanction characterizes that conduct as civil contempt." [1]

---

1. Chapter 27–10, N.D.C.C., as amended by 1993 N.D. Laws, Ch. 89, and 1995 N.D. Laws, Ch. 149, does not use the term "civil" or "criminal" contempt. Rather, the statute uses the term "pu-

Here, Thomas was held in contempt for failing to pay child support, and he "carried the keys to prison in his own pocket" by paying child support arrearages.

■ Thomas also argues that the findings of the amount of support due and owing are not supported by the evidence. Our standard of review in this type of case is summarized in *Throndset v. Hawkenson*, 532 N.W.2d 394, 397 (N.D.1995):

"When it is a review on the record, the district court reviews the judicial referee's findings of fact under the clearly erroneous standard. . . . Conclusions of law are fully reviewable. . . .

"We review the correctness of the district court's reversal of any factual findings by a judicial referee under the clearly erroneous standard. . . . We then review the district court's additional or substitute findings under the clearly erroneous standard. . . . A district court's conclusions of law are fully reviewable." [Citations omitted.]

The ultimate determination whether a contempt has been committed is within the lower tribunal's discretion and will not be overturned on appeal unless there is a plain abuse of discretion. *Ronngren v. Beste*, 483 N.W.2d 191 (N.D.1992).

■ After the show-cause hearing, the judicial referee found Thomas had child support arrearage of $5,810. Thomas asserts the record does not support that finding, and we agree. During the hearing the state's attorney said, "The arrearages in this file are $5,810.00, calculated through July 31, 1995." Thomas responded, "Those figures are incorrect." No document from the clerk of court's office was admitted into evidence showing support payments or arrearage, and no person testified about what support payments Thomas has made or failed to make. Following the hearing, the judicial referee told Thomas:

"... you are welcome to have another motion brought to determine what that arrearage figure is. I would just for your information tell yo[u] that any amount that

is owed to the State is not, will not be forgiven."

Mere statements or arguments made by counsel are not evidence. *See State v. Marks*, 452 N.W.2d 298 (N.D.1990); *Brodersen v. Brodersen*, 374 N.W.2d 76 (N.D.1985). There is no evidence in this record upon which the referee could find Thomas in arrears $5,810 on child support payments. Therefore, we conclude that finding is clearly erroneous. Because there is no evidence showing Thomas's child support obligation is in arrears, we also conclude the judicial referee, and the trial court in affirming the referee, plainly abused their discretion in determining Thomas was in contempt of court.

Thomas testified he receives $1,104 in monthly social security disability benefits and also receives $575 in monthly social security dependency benefits for Mark, the only child who is still a minor. Thomas argues those dependency benefits should be credited toward his support obligation.

■ In *Guthmiller v. Guthmiller*, 448 N.W.2d 643, 647–648 (N.D.1989), we concluded social security dependency payments "made directly to [the] children or for their benefit" presumptively constitute a change of circumstances for which the obligor is entitled to a credit toward his support obligation. The trial court's decision in *Guthmiller* was rendered before the effective date of the 1989 amendments to Chapter 14–09, N.D.C.C., making the scheduled child support under the guidelines the presumptively correct support obligation. Under the current guidelines it may or may not be appropriate to credit social security dependency payments toward the obligor's support obligation. *See Stultz v. Stultz*, 659 N.E.2d 125 (Ind.1995). Assuming the credit is appropriate, an issue we do not decide, the credit cannot be applied retroactively toward arrearages:

"To apply the credit to the arrearage which accrued prior to the obligor's filing of the modification application would amount to a retroactive modification of

nitive sanction" or "remedial sanction." The sanction imposed here is a remedial sanction.

Section 27–10–01.1(3)(4), N.D.C.C.

vested support rights. This we will not do. The credit should be applied at the time of the filing, however, only if the benefits are then being paid to the dependent child or the child's representative payee."

*Guthmiller,* 448 N.W.2d at 649. The record does not show Thomas ever submitted the $575 dependency payments to Judith, as the children's custodial parent, or otherwise actually used these monies for Mark's benefit. Even assuming these payments are used directly for Mark's support, they cannot be the basis for a credit toward arrearages.

In accordance with this opinion, the order of contempt is reversed.

SANDSTROM, NEUMANN and MESCHKE, JJ., and LEVINE, Surrogate Judge, concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.