2002 ND 139

**Delano GREY BEAR, Plaintiff and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Defendant and Appellee,**

v.

**Robert V. Bolinske, Additional Defendant on Counterclaim and Appellant.**

No. 20010241.

Supreme Court of North Dakota.

Aug. 23, 2002.

Robert V. Bolinske, Bismarck, N.D., for plaintiff and appellant.

Jean R. Mullen, Assistant Attorney General, Bismarck, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Delano Grey Bear and Robert V. Bolinske appeal from a judgment dismissing Grey Bear's claims against the Department of Human Services for intentional infliction of emotional distress and governmental bad faith, and granting summary judgment in favor of the Department on its claim for conversion. We affirm in part, and reverse in part.

I

[¶ 2] Delano Grey Bear was paralyzed from the neck down in a car accident in 1978. As a result of Grey Bear's long-term disability, the Department of Human Services had paid medical expenses in the form of Medicaid benefits on Grey Bear's behalf. In order to receive Medicaid benefits, Grey Bear assigned any rights of recovery he might have from any third-party to the Department for medical costs paid under the Medicaid program.

[¶ 3] As a result of a surgical procedure in 1994, Grey Bear required additional medical services that were paid by the Department through Medicaid. Grey Bear commenced a medical malpractice action because of complications arising from the surgery. The case was settled in 1998 for $30,000. Grey Bear's attorney deducted one-third of the judgment for attorney's fees, and half of the remaining amount was sent to the Department. The Department accepted the amount received, but demanded the entire judgment, less expenses and attorney's fees.

[¶ 4] Grey Bear sued the Department for intentional infliction of emotional distress and governmental bad faith claiming he was entitled to the entire judgment. The Department asserted a counterclaim arguing it was entitled to the entire judgment, less expenses and attorney's fees. The Department filed an amended counterclaim adding Grey Bear's attorney,

Robert V. Bolinske, as a party, alleging a conspiracy to convert the Department's money. The Department moved for summary judgment on Grey Bear's complaint and on the Department's claims against Grey Bear and Bolinske. The trial court granted summary judgment in favor of the Department on all claims.

[¶ 5] Bolinske moved for reconsideration, claiming the trial court did not have personal jurisdiction over him because he was not served with a summons. The trial court denied Bolinske's motion and signed the judgment. Bolinske moved to vacate the judgment. The trial court vacated the judgment and the judge recused himself based on a concern for potential bias and an irritation with Bolinske's tactics. The case was reassigned. After reviewing the case file, the trial court granted summary judgment in favor of the Department. Grey Bear and Bolinske appeal.

II

[¶ 6] Grey Bear argues he made only a partial assignment under N.D.C.C. § 50–24.1–02.1, that he assigned only any claim he might have for medical costs. Grey Bear argues his medical malpractice action was not for medical costs, but for pain and suffering, claims which were never assigned to the Department under N.D.C.C. § 50–24.1–02.1. Therefore, Grey Bear contends, he is entitled to all the proceeds from the settlement.

■ [¶ 7] We are asked on appeal to determine the extent of the assignment granted under N.D.C.C. § 50–24.1–02.1. We recently delineated the standard of review for statutory interpretation:

The interpretation of a statute is a question of law, fully reviewable on appeal. Our primary objective in construing a statute is to ascertain the intent of the Legislature by looking at the language of the statute itself and giving it its

plain, ordinary, and commonly understood meaning. Although courts may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute. In interpreting a statute, we presume the Legislature did not intend an absurd or ludicrous result or unjust consequences. Rather, statutes are to be construed in a practical manner. We give consideration to the context of the statutes and the purposes for which they were enacted.

*Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 43, 643 N.W.2d 29. However, we give some deference to a reasonable interpretation of a statute by the agency responsible for enforcing it, and give appreciable deference to agency expertise if the subject matter is highly technical. *Consol. Tel. Coop. v. W. Wireless Corp.*, 2001 ND 209, ¶ 7, 637 N.W.2d 699.

[¶ 8] Some background about the relevant Medicaid statutes is necessary to fully understand the issue on appeal. Medicaid was enacted in 1965 to provide medical assistance to persons who lack sufficient income or resources to cover the costs of their own essential medical care. *See* 42 C.F.R. § 430.0; *see also Krueger Estate v. Richland Cty. Soc. Serv.*, 526 N.W.2d 456, 457 (N.D.1994). The Medicaid program is governed by the Social Security Act, 42 U.S.C. §§ 1396–1396v, and is jointly financed by federal and state governments. *Hecker v. Stark County Social Service Bd.*, 527 N.W.2d 226, 233 (N.D.1994). Once a state elects to participate in the Medicaid program, the federal government will share the costs if the state's plan complies with the requirements of the Act and the related regulations set forth by the Department of Health and Human Services.

*Krueger Estate*, at 457. Medicaid is intended to be the payor of last resort. *Hecker*, at 235. States must require medical assistance payment recipients to assign to the state any rights they have to reimbursement for medical care from any third parties. *See* 42 U.S.C. § 1396k. Section 1396k provides:

(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this title ..., a State plan for medical assistance shall—

(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—

(A) to assign the State any rights, of the individual ... to payment for medical care from any third party ...

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed ... and the remainder of such amount collected shall be paid to such individual.

[¶ 9] The North Dakota legislature has given state agencies who provide assistance to needy persons the right to be reimbursed for that assistance from persons who have support obligations to those receiving the assistance. *Mehl v. Mehl*, 545 N.W.2d 777, 779 (N.D.1996). North Dakota has created a statutory assignment of claim to comply with the federal guidelines, under N.D.C.C. § 50–24.1–02.1, which provides:

Each applicant or recipient of benefits under this chapter must be deemed to have assigned, to the department of human services, any right of recovery the applicant or recipient may have for medical costs incurred under this chapter not exceeding the amount of funds expended by the department for the care and treatment of the applicant or recipient. The applicant or recipient, or other person empowered by law to act in the applicant's or recipient's behalf, shall execute and deliver an assignment of claim, assignment of rights, or other authorizations as necessary to secure fully the right of recovery of the department. The assignment:

1. Is effective as to both current and accrued medical support recovery obligations.

2. Takes effect upon a determination that an applicant is eligible for assistance under this chapter.

■ [¶ 10] Grey Bear argues his assignment under N.D.C.C. § 50–24.1–02.1 was only for medical expenses, and not his claim for pain and suffering. The same argument was raised in *Link v. Town of Smithtown*, 175 Misc.2d 238, 670 N.Y.S.2d 692 (1997). The plaintiff argued the State's recovery of medical assistance it paid on behalf of the plaintiff should be limited to that portion of the settlement proceeds allocated to reimburse the plaintiff for medical expenses, and not that portion of the settlement proceeds intended to compensate the plaintiff for pain and suffering. *Link*, 670 N.Y.S.2d at 695. In determining all of the proceeds of the settlement were available to satisfy the State's claim, the court analyzed both the federal and state assignment statutes. *Id.* The court concluded the language in the state statutes underscored the legislature's clear intention the state be afforded broad and extensive means to obtain third-party

reimbursement of Medicaid expenditures. *Id.*

[¶ 11] Other courts when faced with the similar argument have reached the same conclusion as *Link. See Wilson v. State of Washington,* 142 Wash.2d 40, 10 P.3d 1061, 1066 (2000), *cert. denied,* 532 U.S. 1020, 121 S.Ct. 1959, 149 L.Ed.2d 755 (2001) (stating reimbursement is not limited to the recovery allocated specifically to medical expenses); *Waldman v. Candia,* 317 N.J.Super. 464, 722 A.2d 581, 587 (1999) (stating the New Jersey Medicaid statute does not distinguish between categories of damages); *Calvanese v. Calvanese,* 93 N.Y.2d 111, 688 N.Y.S.2d 479, 710 N.E.2d 1079, 1081 (1999). *But see Martin v. City of Rochester,* 642 N.W.2d 1 (Minn. 2002) (stating the state becomes the owner of the claim against a third party for medical expenses, but the recipient retains ownership of any other claims); *Arizona Health Care Cost Containment System v. Bentley,* 187 Ariz. 229, 928 P.2d 653, 656 (1996) (stating assignments apply only to tort settlements if they are medical benefits). In *Calvanese,* the appellants argued that only the settlement proceeds specifically allocated to past medical expenses should be available to satisfy the state's claim. 688 N.Y.S.2d 479, 710 N.E.2d at 1081. The court stated that nowhere in the elaborate scheme governing Medicaid

"is the agency's right of recovery restricted in this manner." *Id.* The court concluded the state acquires the right to payments by any third party for health care items or services and must retain from the recovery an amount as is necessary to reimburse it for medical payments made on behalf of an individual. *Id.* (citing 42 U.S.C. §§ 1396[a][25][H] and 1396k[b] ).

[¶ 12] Grey Bear argues in his brief that none of the cases relied upon by the Department are applicable to this case because the statutes underlying the holdings in those cases are totally different from the North Dakota statute. While North Dakota's Medicaid assignment statute, N.D.C.C. § 50–24.1–02.1,[1] uses different language than other state's statutes, all of the statutes are intended to comply with the rules and regulations of the federal Medicaid statutes set forth by the Social Security Act, 42 U.S.C. §§ 1396–1396v. Under the federal scheme, the states are required to enact laws under which a recipient of Medicaid assistance assigns to the state rights of third-party payments for medical care provided. *Wilson v. State of Washington,* 10 P.3d at 1064 (citing 42 U.S.C. § 1396a(a)(25)(H); 42 C.F.R. § 433.146). States have enacted different language in individual statutes to effectuate the mandates of the federal regulations.[2] While we are not compelled to

---

1. The previous version of N.D.C.C. § 50–24.1–02.1 granted the Department both a subrogation right and an assignment right for medical expenses provided. The reference to subrogation was eliminated by the Legislative Assembly in 1981. *See State ex rel. Moug v. N.D. Auto.,* 322 N.W.2d 245, 246 (N.D.1982). A review of the legislative history indicates the amendment to N.D.C.C. § 50–24.1–02.1 was intended to provide an automatic assignment, by each applicant for medical assistance, of any right that applicant might have to recover medical costs from some third party. *Hearing on S.B. 2159 Before the Senate Social Services & Veterans Affairs Comm.,* 47th N.D. Legis. Sess. (Jan. 22, 1981) (testi-

mony of Blaine L. Nordwall, Social Services Board of North Dakota).

2. North Dakota's assignment statute, N.D.C.C. § 50–24.1–02.1, is similar to both Pennsylvania's, 62 P.S. § 1404(b) (2001), and Utah's, Utah Code Ann. § 26–19–4.5(1)(a), statutes because there is only a right of assignment for recovery from third parties granted to the state for medical assistance provided. Many states, including New York, New Mexico, and Minnesota, have Medicaid statutes that provide for recovery from third parties with both assignment and subrogation rights. *See e.g.* N.Y. CLS Soc. Serv. §§ 366(4)(h)(1) (assignment statute), 367–

follow the interpretation or determinations from other states' Medicaid statutes, we will look to other states as guides in helping interpret the federal Medicaid statutes in relation to North Dakota's statutes. *See Estate of Zins v. Zins*, 420 N.W.2d 729, 731 (N.D.1988).

 [¶ 13] The Department also relies on a letter it received in 1994 from the Federal Department of Health and Human Services. The letter was sent to state Medicaid directors and addressed the issue Grey Bear raises. The letter explained that in tort recovery situations, "the recovery will often contain more than just an element for medical services, such as pain and suffering or loss of consortium." The letter went on to state, "[a]lthough the recipient has a claim to this recovery amount ... the recipient has assigned to the State any rights to medical support and to payment for medical care from the third-party payer. Thus, the State has claim to the entire amount recovered." The Department relied on this letter in arguing that both the federal and state statutes require third-party recovery for the entire amount of the medical costs expended by the Department. While we are not required to follow the Department's interpretations of the statutes, we normally defer to a reasonable interpretation of a statute by the agency responsible for enforcing it, especially when that interpretation does not contradict the statutory language. *See Cass County Elec. Coop. v. Northern States Power Co.*, 518 N.W.2d 216, 220 (N.D.1994).

 [¶ 14] This issue must be decided by analyzing North Dakota's Medicaid as-

signment statute. The relevant portion of N.D.C.C. § 50–24.1–02.1 states that a recipient of Medicaid must assign "any right of recovery the applicant or recipient may have for medical costs incurred under this chapter not exceeding the amount of funds expended by the department for the care and treatment of the applicant or recipient." Grey Bear argues the phrase "for medical costs incurred" modifies the preceding language, limiting the required assignment to "any right of recovery [he] may have for medical costs incurred." Grey Bear's argument ignores the language of the statute immediately following "for medical costs." We read statutes as a whole to give meaning to each word and phrase, whenever fairly possible. *In re Juran & Moody, Inc.*, 2000 ND 136, ¶ 6, 613 N.W.2d 503. When read as a whole, N.D.C.C. § 50–24.1–02.1 assigns the Department any right of recovery the applicant may have for an injury, but limits what the Department may claim to the amount of medical costs incurred under this chapter for that injury. We conclude the assignment under N.D.C.C. § 50–24.1–02.1 gives the Department the right to recover any settlement received by Grey Bear, even if designated for pain and suffering, but the statute specifies the Department's recovery must be for medical costs incurred under the chapter and limits the recovery to the amount of funds expended by the Department for the care and treatment of the applicant or recipient.

III

 [¶ 15] Grey Bear argued, in the alternative, that if the assignment was considered a total assignment, the Depart-

---

A(2)(b) (subrogation statute); N.M.Stat.Ann. §§ 27–2–28(G)(1)(b) (assignment statute), 27–2–23(B) (subrogation statute); Minn.Stat. §§ 256B.056, subd. 6 (assignment statute), 256B.037, subd. 1 (subrogation statute). In Washington, the Medicaid statutes, Rev.Code Wash. §§ 74.09.180, 74.09.185, grant only a subrogation right for recovery, but the supreme court has found these subrogation statutes act as a statutory assignment. *See Wilson*, 10 P.3d at 1064–65.

ment still had all the rights it had acquired. Grey Bear contends the fact that he was able to wring a settlement out of the insurance company even though he had assigned away all his rights to the claim, had no effect on the Department's right to bring its own claim. A closer reading of N.D.C.C. § 50–24.1–02.1 shows a recipient "shall execute and deliver an assignment of claim, assignment of rights, or other authorizations as necessary to secure fully the right of recovery of the department." Under the statute, Grey Bear not only assigned his right to pursue a malpractice claim, he also assigned any right of recovery he might have. The assignment is for the right of payment from the third-party, not solely the right to pursue a cause of action against the third party. *Wilson*, 10 P.3d at 1066. The federal Medicaid scheme grants the state the option either to pursue the claim directly against a third party or to collect from any third-party recovery the applicant or recipient might receive. *Id.* at 1066–67. The Department was well within its rights to refuse to pursue a separate malpractice action, and to recover from the settlement instead.

[¶ 16] Contrary to Grey Bear's assertion, we do not believe it is the insurance company's problem if it turns out it paid Grey Bear on a claim he had assigned to the Department. In a similar case, a court ruled if the Medicaid recipient fails to notify the third-party insurer of the assignment, the insurer is not required to pay double. *See Arkansas Dep't of Human Services v. Ferrel,* 336 Ark. 297, 984 S.W.2d 807, 811 (1999). Instead, the recipient was required to pay over funds which were actually meant for the Department of Human Services in the first place. *Id.* The insurance company is not required to pay the same claim twice. *See John Miller Co. v. Harvey Mercantile Co.,* 45 N.D. 503, 178 N.W. 802, 806 (1920) (noting equitable rules prevent a party from paying the same claim twice).

[¶ 17] We conclude the Department had the authority to refuse to bring a claim directly against a third party, and to recover the third-party settlement payment directly from Grey Bear.

IV

[¶ 18] Grey Bear argues the trial court erred in denying his motion to amend the judgment to include his costs in obtaining the settlement and in denying two requests for a hearing on the issue. We review a trial court's decision denying a motion to amend the judgment to include costs under an abuse of discretion standard. *Vanover v. Kansas City Life Ins. Co.,* 553 N.W.2d 192, 199 (N.D.1996). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Western Nat'l Mut. Ins. Co. v. Univ. of N.D.,* 2002 ND 63, ¶ 31, 643 N.W.2d 4.

[¶ 19] In order to properly analyze the issue of costs in this action, we must look to the procedural history surrounding Grey Bear's argument. In the order for judgment issued by Judge Riskedahl on April 24, 2000, the Department was awarded the "settlement proceeds ($30,000), less the 20 percent attorney fees it had indicated would be payable to Mr. Bolinske for pursuing the medical malpractice claim and expenses that have been documented by Mr. Bolinske ($2,656.34)." On May 26, 2000, Grey Bear moved to vacate the judgment. In his motion, Grey Bear objected to the $2,656.34 award of costs. In his brief, Grey Bear stated he had not "received any listing of defendant Department's claim for costs and is mystified at what they may be." On June 6,

2000, the Department responded to Grey Bear's objection to the award of costs, indicating:

> Bolinske also has misunderstood the discussion of "costs" in the judgment. The costs are those that the Department must reimburse to Bolinske for the costs incurred in obtaining the settlement of Grey Bear's claims in the malpractice suit. As noted, those are costs that are deleted from Bolinske's overall payment to the Department.

On June 29, 2000, Grey Bear's attorney sent a letter to Judge Riskedahl withdrawing his request for a hearing on his motion to vacate the judgment. On August 25, 2000, Judge Riskedahl vacated the earlier judgment and recused himself from the case as a result of the alleged bias raised by Bolinske.

[¶ 20] The action was subsequently assigned to Judge Holum. On March 8, 2001, the trial court's new order for judgment again awarded Grey Bear costs, stating:

> The Department is entitled to a judgment from Mr. Bolinske and Mr. Grey Bear, jointly and severally, in an amount equal to the settlement proceeds ($30,-000), less the 20 percent attorney fees it had indicated would be payable to Mr. Bolinske for pursuing the medical malpractice claim ($6,000) and expenses that have been documented by Mr. Bolinske ($2,656.34), less any amounts paid to the Department.

Grey Bear again objected to the inclusion of costs in the judgment, claiming the Department had never submitted a claim for costs as required by N.D.R.Civ.P. 54(e)(1). In the Department's response this time, it indicated that if the trial court ordered, it would not deduct Grey Bear's costs from the amount due the Department. On March 30, 2001, the trial court granted Grey Bear's objection to costs and amend-

ed the judgment to remove them. In its order, the trial court explained:

> For some reason, Mr. Grey Bear and Mr. Bolinske have been unable to accept [the Department's] explanation and have objected again to the payment of costs in the underlying litigation. While the court views it to be against Mr. Bolinske's best interests, this Court is not about to require the Department to reimburse Mr. Bolinske his costs in the underlying litigation if Mr. Bolinske continuously and strenuously objects.

[¶ 21] On April 24, 2001, Grey Bear moved to amend the judgment because it excludes costs which should have been included in the judgment. Grey Bear claims he initially objected to the costs because they appeared to require that costs be added to the judgment rather than deducted. Grey Bear also claimed N.D.R.Civ.P. 54(e) required the trial court to set a hearing date. The trial court denied Grey Bear's motion to amend the judgment on the grounds that Bolinske "failed to diligently protect his own interests by his continuous failure to read the pleadings, orders and judgments in this case."

[¶ 22] After reviewing the history of Grey Bear's dispute over the issue of costs, we do not find that the trial court abused its discretion in denying Grey Bear's motion to amend the judgment to include costs. Grey Bear's main complaint on appeal is that the trial court did not grant a hearing despite his repeated requests for one. Grey Bear's first request, on June 29, 2000, was mooted when Judge Riskedahl vacated the judgment. The second request came with Grey Bear's second motion to amend the judgment to exclude the award of costs. The Department acquiesced to Grey Bear's motion, so the trial court determined there was no need to hold a hearing, and the motion was granted. After Grey Bear finally realized

his mistake, he moved to amend the judgment once again, this time to reinstate the costs. The trial court denied Grey Bear's request for a hearing on this motion and concluded Bolinske's failure to exercise due diligence should not be rewarded with yet another amendment of the judgment. Grey Bear need not be allowed to delete an amendment to a judgment, an amendment he had vigorously and persistently pursued in the face of contrary advice and explanations, merely because of an obstinate mistake in understanding the court's order. *See Selinger v. Selinger,* 250 A.D.2d 752, 672 N.Y.S.2d 913 (1998); *see also Textron, Inc. v. Whitfield,* 380 So.2d 259, 262 (Al.1979) (Torbert, C.J., dissenting). We conclude the trial court did not abuse its discretion in denying Grey Bear's requests for hearings, nor his final motion to amend the judgment.

### V

[¶ 23] Grey Bear argues the trial court's award of attorney's fees was unjust and unreasonable and constitutes an abuse of discretion. The trial court awarded Grey Bear twenty percent of the settlement for payment of attorney's fees. Grey Bear claims the thirty-three and one-third percent fee agreed on by him and Bolinske should have been awarded.

[¶ 24] We review a trial court's determination of attorney's fees under the abuse of discretion standard. *City of Medora v. Golberg,* 1997 ND 190, ¶ 18, 569 N.W.2d 257. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process, or it misinterprets or misapplies the law. *Klagues v. Maintenance Engineering,* 2002 ND 59, ¶ 6, 643 N.W.2d 45.

[¶ 25] The Department sent a letter to Bolinske during the malpractice action notifying him of Grey Bear's assignment to the Department and the Department's right to recover payments made on Grey Bear's behalf. Attached to the Department's letter was a form entitled Attorney's Agreement as to Recipient's Recovery from Third Party. The form provided:

The attorney's fee shall otherwise be a percentage of the gross recovery to the North Dakota Department of Human Services to be determined in the following manner:

1. Twenty percent when recovery is made without service of a summons in a civil action;

2. Twenty-five percent when a civil action is commenced and settled before trial; or

3. Thirty-three and one-third percent when recovery is made after trial of a civil action has commenced.

Payment of the net amount payable to the North Dakota Department of Human Services shall be made immediately upon the obtaining of any recovery.

[¶ 26] As previously discussed, the North Dakota Legislative Assembly has given state agencies who provide assistance to needy persons the right to be reimbursed for that assistance from persons who have support obligations to those receiving the assistance. *Mehl v. Mehl,* 545 N.W.2d 777, 779 (N.D.1996). Under N.D.C.C. § 50–24.1–04, the Department is granted the authority to promulgate rules and regulations to meet the federal objectives. One of the rules the Department has established is to set an attorney's fee schedule for the recipient's collection of third-party liability. We are unpersuaded by Grey Bear's argument that an award of twenty percent of the settlement is unjust or unreasonable. We conclude the trial court did not abuse its discretion in its award of attorney's fees.

## VI

■ [¶ 27] Bolinske argues the summary judgment against him is null and void because the trial court lacked personal jurisdiction. Bolinske claims there was insufficiency of process and insufficiency of service of process against him because he was never served with any summons.

[¶ 28] The persons over whom a trial court may exercise personal jurisdiction are determined by Rule 4 of the North Dakota Rules of Civil Procedure. *Moon v. Moon*, 499 N.W.2d 597, 599 (N.D.1993). Rule 4(b)4, N.D.R.Civ.P., explains how courts of this state acquire jurisdiction: "A court of this state may acquire personal jurisdiction over any person through service of process as provided in this rule or by statute, or by voluntary general appearance in an action by any person either personally or through an attorney or any other authorized person." We have defined personal service of process as the actual or direct delivery of the summons or a copy thereof to the person to whom it is directed or to someone who is authorized to receive it in his behalf. *In re Estate of Ashbrook*, 110 N.W.2d 184, 192 (N.D.1961) (citing 42 Am.Jur. *Process*, § 48).

[¶ 29] There is no dispute in this case that the trial court did not obtain personal jurisdiction over Bolinske through service of process. The Department does not dispute that it failed to serve Bolinske with a summons, but instead claims an alternative basis existed to obtain personal jurisdiction. The Department claims the trial court had jurisdiction over Bolinske because he waived service of process by his actions in this case. The Department contends Bolinske waived service of process by voluntarily appearing in the action.

■ [¶ 30] Rule 4(b)(4), N.D.R.Civ.P., permits a court to acquire personal jurisdiction over any person by voluntary general appearance in an action by any person

either personally or through an attorney. *Code v. Gaunce*, 315 N.W.2d 304, 307 (N.D.1982). In the absence of a previously made and properly preserved objection to the jurisdiction of the trial court, a general appearance amounts to a waiver of the right to object to the jurisdiction of the court over the person of the appearing party. *Wallwork Lease & Rental Co. v. Schermerhorn*, 398 N.W.2d 127, 129 (N.D. 1986) (citing *Tooz v. Tooz*, 78 N.D. 432, 50 N.W.2d 61, 65 (1951)). Under N.D.R.Civ.P. 12(h), the defense of insufficiency of process is waived if it is not made by a motion or included in a responsive pleading. *Messer v. Bender*, 1997 ND 103, ¶ 7, 564 N.W.2d 291.

[¶ 31] The Department contends Bolinske did not raise the issue of the trial court's jurisdiction until after the judgment against him was issued. A review of the record indicates Bolinske did in fact raise the lack of the trial court's jurisdiction in the reply to the Department's counterclaim dated January 11, 2000. Paragraph five of Grey Bear and Bolinske's reply states, "the Counterclaim is subject to all defenses set forth in Rule 12(b) in that the court lacks personal jurisdiction over the parties named therein, there is an insufficiency of process, an insufficiency of service of process ..."

[¶ 32] This issue provides a unique situation because of Bolinske's relationship as the attorney for Grey Bear. While Bolinske continued to act as Grey Bear's attorney, the only time Bolinske subjected himself personally to the trial court's jurisdiction was in a motion for an extension of time to respond to the Department's counterclaim and in the reply to the counterclaim. We have noted that a request for a reasonable extension of time does not always constitute a waiver of jurisdictional defects. *Wallwork Lease*, 398 N.W.2d at 130, n. 3. In *Opp v. Matzke*, 1997 ND 32,

¶¶ 16–17, 559 N.W.2d 837, a party was found to have made a voluntary general appearance when he submitted an affidavit, counsel made an appearance on his behalf, and he participated in answering interrogatories. Unlike the defendant in *Opp*, Bolinske never made a general appearance or caused one to be made on his own behalf and, except for requesting an extension of time and responding to the counterclaim, only participated in this action as attorney for Grey Bear. We conclude the trial court lacked personal jurisdiction over Bolinske, and reverse the judgment against him.

### VII

[¶ 33] The trial court's judgment in favor of the Department of Human Services for recoupment of an assignment on a third-party settlement is affirmed. The trial court's judgment against Robert V. Bolinske is reversed based on a lack of personal jurisdiction.

[¶ 34] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER concur.

[¶ 35] The Honorable JAMES M. BEKKEN, D.J., sitting in the place of SANDSTROM, J., disqualified.

BEKKEN, District Judge, concurring.

[¶ 36] I concur with the results reached by the majority. Accordingly, I would affirm the trial court's summary judgment in favor of the Department of Human Services on its claim for conversion against Delano Grey Bear, and would reverse the trial court's judgment against Robert V. Bolinske. I write separately since I respectfully disagree with the conclusion set forth by the majority in section II, ¶ 14, that "the assignment under N.D.C.C. § 50–24.1–02.1 gives the Department the right to recover any settlement received by Grey Bear, even if designated for pain and suffering ...."

[¶ 37] The majority interprets the statute as giving the Department the right to recover "any settlement received" by Grey Bear. I interpret the statute as giving the Department the right to recover "any third-party settlement Grey Bear received as payment or reimbursement for medical costs." I disagree with the majority's broad reading of the statute that the applicant or recipient assigns to the Department any right of recovery the applicant may have to recover any settlement, even if designated for pain and suffering. I agree with Grey Bear that the phrase "for medical costs incurred" modifies the preceding language in the statute. The majority disagrees that the words "medical costs incurred" modify the preceding part of N.D.C.C. § 50–24.1–02.1. The majority interprets the phrase "for medical costs incurred" with the remaining part of the sentence and thus concludes the statute as a whole requires the applicant or recipient must be deemed to have assigned to the Department the right to recover "any settlement received" by the applicant. That right of recovery, according to the majority, allows the Department the right to recover any settlement received by Grey Bear, even if designated for pain and suffering and only limits the recovery to the amount of funds expended by the Department for the care and treatment of the applicant or recipient.

[¶ 38] I do agree that the plain language of the last portion of the first sentence in N.D.C.C. § 50–24.1–02.1 does limit the recovery by the Department to the amount of funds expended by the Department for the care and treatment of the applicant or recipient. However, I disagree with the majority's interpretation that the phrase "for medical costs incurred under this chapter" does not define the

limit of the assignment given by the applicant or recipient to the Department. I believe it does limit the assignment and that such an interpretation is consistent with language in the federal statutes as well. As noted by the majority in ¶ 8, 42 U.S.C. § 1396k(a) provides for states to require medical assistance payment recipients to assign to the state any rights they have for reimbursement or payment for medical care from any third party. I agree with the reasoning set forth in the cases cited by the majority in ¶ 11 but not followed by the majority. *See Martin v. City of Rochester,* 642 N.W.2d 1 (Minn. 2002) and *Arizona Health Care Cost Containment System v. Bentley,* 187 Ariz. 229, 928 P.2d 653, 656 (1996). I believe the majority's interpretation of the statute is too broad. The right of recovery should be limited to recoveries the recipient receives for medical care or medical costs from any third party.

[¶ 39] In summary, I cannot equate amounts given for pain and suffering to an injured person by a third party to be a right of recovery for medical costs or medical care incurred. Pain and suffering do not equate to medical costs or medical care. Thus, those amounts recovered for pain and suffering are not, in my interpretation of the statute, covered by the assignment given in N.D.C.C. § 50–24.1–02.1.

[¶ 40] Given my interpretation of the statute, a remand to the trial court for a determination of what portion of the settlement proceeds constituted payment or reimbursement for medical costs incurred by Grey Bear would seem appropriate. However, since I agree with the majority that the trial court's granting of summary judgment in this case was appropriate, a remand is unnecessary. A party resisting summary judgment must present competent evidence which raises a disputed issue

of material fact. Although a party seeking summary judgment bears the initial burden of establishing there are no genuine issues of material fact, a party resisting the summary judgment may not simply rely upon the pleadings or upon unsupported conclusory allegations. *Hougum v. Valley Memorial Homes,* 1998 ND 24, ¶ 8, 574 N.W.2d 812. The resisting party must present competent admissible evidence by affidavit or other similar means which raises a disputed issue of material fact and must, if appropriate, draw the Court's attention to relevant evidence in the record by setting out the page and line in depositions or other documents containing evidence raising an issue of material fact. *Id.* It is presumed the evidence does not exist, if no evidence raising a disputed issue of material fact is presented. *Id.*

[¶ 41] In this case, the Department moved for summary judgment on the Department's counterclaim that it was entitled to the full amount of any recovery Grey Bear receives from a third party for damages up to the total amount of Medicaid benefits furnished to him. Grey Bear submitted no opposing affidavit or other evidence establishing how much, if any, of the settlement proceeds in this case were for pain and suffering rather than medical costs incurred. Accordingly, there being no disputed issue of material fact on that issue, I agree that it was proper for the trial court to grant summary judgment as a matter of law in favor of the Department.

[¶ 42] Other than my disagreement with the majority regarding the conclusion that the assignment under N.D.C.C. § 50–24.1–02.1 gives the Department the right to recover any settlement received by Grey Bear, even if designated for pain and suffering, I agree with the reasoning set forth by the majority in the conclusions

reached in sections III through VI and the results set forth in section VII.

[¶ 43] JAMES M. BEKKEN, D.J., and MARY MUEHLEN MARING, J., concur.

MARING, Justice, concurring.

[¶ 44] I join in the concurrence of Judge Bekken. I write separately because I am troubled by paragraph 16 of Part III in the majority opinion. This paragraph states: "Contrary to Grey Bear's assertion, we do not believe it is the insurance company's problem if it turns out it paid Grey Bear on a claim he had assigned to the Department." I disagree with this statement if it means that it does not matter whether the third-party insurer had notice of the assignment or not. I am of the opinion that if the third-party insurer did have notice of the Department's right to recover and proceeded to settle with Grey Bear for all claims, the Department would have a right to recover payments for medical care from the third-party insurer. *See Burgener v. Bushaw,* 545 N.W.2d 163, 167 (N.D.1996). If the third-party insurer had notice of the assignment, the Department must be included in the settlement discussions or the third-party insurer risks a separate action against it. Grey Bear, however, did not come forward with any evidence at the time of the summary judgment motion, which would establish the third-party insurer had notice of the Department's right to recover for medical care. It is interesting to note, however, that the record reveals correspondence between Grey Bear's attorney and the Department, which indicates the Department had notice of the malpractice action before the case was settled. Again Grey Bear did not produce any evidence the Department placed the third-party insurer on notice of its rights.

[¶ 45] Further, in this case, once Grey Bear settled with the third-party insurer and provided a release of all claims, he extinguished the Department's right of subrogation. *See id.* ("[U]nder general subrogation principles, release of the injured plaintiff's claims against the tortfeasor released the dependent subrogation rights as well."). Consequently, the entire settlement was subject to the Department's claim for medical care. Arguably, because Grey Bear assigned to the Department his right to bring a direct cause of action against the third party for medical expenses, Grey Bear had no enforceable claim for medical expenses and could not settle the Department's claim. Grey Bear retained, however, his right to bring a cause of action for damages, other than medical expenses, which he incurred as a result of the conduct of the third-party tortfeasor.

[¶ 46] I agree with the conclusion of the Minnesota Supreme Court that the granting of a broad assignment right, such as the majority opinion sets forth in this case, allows the Department "to expand the range of the required assignment to defeat the anti-lien provision," which interferes with the federal Medicaid scheme. *Martin v. City of Rochester,* 642 N.W.2d 1, 18 (Minn.2002). The federal anti-lien statute prohibits states from imposing a lien on property of a Medicaid recipient because of medical assistance paid. 42 U.S.C. § 1396p(a)(1) (2000) ("[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid ...."). The purpose of this general prohibition is "to protect the recipient's limited assets, including nonassigned rights to recover, ..." *Martin,* at 18. The Minnesota Supreme Court concluded that the federal statutes, 42 U.S.C. § 1396a(a)(25)(H) (2000), 42 U.S.C. § 1396p(a)(1) (2000), and 42 U.S.C. § 1396k(a) (2000), "reflect dual federal objectives: first, protection of the recipient's

limited assets from encroachment by the state for reimbursement for medical expenses paid; second, requiring recovery and reimbursement from third parties liable for the recipient's medical expenses that were paid by Medicaid." *Id.* at 14. The Minnesota Supreme Court distinguished several of the cases cited by the majority opinion in this case. The Minnesota Supreme Court further stated:

> We are also mindful of the state's equitable argument that it needs to preserve and recover Medicaid assets. But our resolution of the issue before us does not eliminate the state's ability to recover medical expenses when third parties are liable. Rather, our conclusion leaves the federal scheme intact and the state retains the assignment of a medical assistance recipient's right to recover for medical expenses against potentially liable third parties. Indisputably, the state's rights are limited—they only extend to a recipient's right to recover for medical expenses. The state has no interest under the assignment in any of the recipient's recoveries from third parties for claims other than for medical expenses. But the state does not have to wait for the recipient to initiate an action. Under harmonized federal and state law, medical assistance recipients are required to assign to the state their rights to receive payment for medical expenses from any potentially liable third parties. This assignment enables the state to acquire the recipient's property rights to this particular claim and to take independent legal action, or, as in this case, to be joined as a party to the recipient's action. Thus, the state can take an active role as a plaintiff in its own right and does not have to rely on the efforts of others to ensure a recovery of medical assistance expenses. Therefore, even though the method of obtaining medical assistance

reimbursement that the state seeks in this litigation is not available to it, the state has other alternatives available to recover medical expenses.

*Id.* at 24, 25.

[¶ 47] I am persuaded by the clear logic of the Minnesota Supreme Court concluding that the Department cannot recover for medical expenses paid under Medicaid from settlements or verdicts for pain and suffering, loss of earnings, and other elements of damage, none of which are compensated by the Department through medical assistance.

[¶ 48] MARY MUEHLEN MARING and JAMES M. BEKKEN, D.J., concur.